HAILEY et al. v. OREGON SHORT LINE R. CO.

(District Court, D. Idaho, S. D.   September 4, 1918.)

1. CARRIERS ⚷218(10)—CARRIAGE OF LIVE STOCK—INTERSTATE SHIPMENT—
NOTICE OF LOSS.
   Where an interstate shipment of horses was unnecessarily and careless-
ly held in the railroad yards at an intermediate point, notice of claim for
loss was unnecessary; the shipping contract following Act Feb. 4, 1887, §
20, as amended by Act March 4, 1915, § 1 (Comp. St. 1916, § 8604a), de-
claring notice unnecessary for damage in transit by carelessness or negli-
gence, etc.

2. PLEADING ⚷364(3)—STRIKING REDUNDANT MATTER—ANSWER.
   Notice of damage to live stock in transit, caused by the carrier's negli-
gence, being unnecessary, under Act Feb. 4, 1887, § 20, as amended by
Act March 4, 1915, § 1 (Comp. St. 1916, § 8604a), an allegation, in answer
in action for such damage, as to lack of notice, will be stricken as re-
dundant and immaterial.

At Law. Action by J. A. Hailey, J. W. Smeed, and C. R. Smeed,
copartners doing business as the Caldwell Horse & Mule Company,
against the Oregon Short Line Railroad Company, a corporation. On
motion to strike a portion of the answer, and demurrer thereto. Mo-
tion allowed.

Wood & Driscoll, of Boise, Idaho, for plaintiffs.
Geo. H. Smith, of Salt Lake City, Utah, and H. B. Thompson, of
Pocatello, Idaho, for defendant.

DIETRICH, District Judge.   [1, 2] The plaintiffs, doing business
under the firm name of Caldwell Horse & Mule Company, have brought
this action to recover from the defendant the aggregate sum of $6,553.-
40, on account of damages which they claim to have suffered as a conse-
quence of the negligence of the defendant company and connecting
carriers in transporting for them 139 head of horses from Caldwell,
Idaho, to East St. Louis, Ill., on the 24th day of January, 1917.   In
substance it is charged that the time consumed in the transportation
was 16 days, whereas it should have been only 7, and that the horses
were unnecessarily and carelessly held at Green River, Wyo., for 8
days, in the yards of the railroad company, without proper shelter
and care, or proper facilities therefor.   As a consequence of such
delay and carelessness, it is alleged, 1 horse was never delivered at
all and 2 of the horses were dead at the time the shipment arrived
at St. Louis, an aggregate loss of $450; $585 was necessarily spent
by plaintiffs for feed at Green River; $518.40 in caring for and feed-
ing the horses at East St. Louis, in bringing them up to a fair condi-
tion for the market; and there was a depreciation in the market value
of $5,000.

As a part of its defense the defendant sets forth the shipping agree-
ment, one provision of which is to the effect that, unless notice of
damages was presented in writing within 90 days from the unloading

⚷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the horses at St. Louis, all claims would be deemed to have been waived, with the proviso, however, that:

"If loss, damage, or injury complained of was due to delay or damage caused or contributed to by the carrier, or its employés, while being loaded or unloaded, or if damaged in transit by carelessness or neglect of the carrier, or its employés, then no notice of claim or filing of claim" would be required.

The plaintiff interposes a motion to strike out the part of the answer setting up this defense, and also interposes a demurrer to reach the same point. The question raised by both the motion and demurrer, upon which the cause is presently submitted, involves a construction of the language above quoted from the shipping contract, or, more accurately, a construction of substantially the same language contained in the amendatory act of March 4, 1915 (38 Stat. 1196, c. 176, § 1 [Comp. St. 1916, § 8604a]). In so far as it is material, this act is as follows:

"It shall be unlawful for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: Provided, however, that if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

So far as appears, the plaintiffs never gave any notice or made any claim of loss. As already stated, the horses were held at Green River for the period of 8 days, and it is to be inferred from the complaint that most, if not all, of the damage resulted from such detention. It is the defendant's position that while the horses were so detained they were not "in transit," within the meaning of the proviso above quoted, and that therefore the plaintiffs were not relieved from presenting a claim within the time prescribed, and, having failed to present such claim, they cannot now recover. It must be admitted that the meaning of the proviso is extremely obscure. The subject-matter which Congress had under consideration was the extent to which the carrier should be permitted to go in exacting notice and the presentation of claims for damages. In the principal clause it is declared that it shall be unlawful to require notice in less than 3 months, the filing of claims in less than 4 months, or the bringing of suit in less than 2 years. Such a provision would seem to be both clear and reasonable. But why an exception to it? Why, in the absence of fraudulent concealment or some extraordinary disability, excuse the shipper in any case from giving notice or filing his claim or commencing his suit within the period prescribed? No satisfactory answer has been suggested, and apparently none is at hand. We cannot with assurance, therefore, interpret the proviso in the light of the object intended to be accomplished, nor can a construction be condemned merely because thereunder the provision does not commend itself to us as being entirely reasonable.

If, then, we take the only course open to us and give to the terms employed their common import, what is the result? To say that the phrase "in transit" is applicable only while a shipment is actually moving is to give to it an unusual and strained construction. Ordinarily a shipment is understood to be in transit from the point of origin until it reaches the point of destination. So long as it is in the course of being delivered to the place to which it is being shipped, it is in transit. A piece of baggage billed from New York to Boise is in transit all the time it is in the possession of the carrier for delivery at Boise—just as much when it is upon a car standing at a station, pursuant to or awaiting orders, or upon a truck or station platform for transfer to another car, en route, as when it is upon a car moving 40 miles an hour. Not only would we do violence to the ordinary meaning of the phrase if we hold that here it is to be understood as equivalent to "while actually moving," but such a construction would necessarily result in absurd distinctions. As to the duty of giving notice or filing a claim, why should a discrimination be made between the case of a collision, where the car carrying the shipment is standing on a siding, and one where it is moving on a siding? Nor, if we say "in transit" is limited to cases where the shipment is actually in a car, is the construction any more defensible. No semblance of reason can be assigned for requiring notice if the freight is burned in or stolen from a car, and at the same time relieving the shipper from such obligation if the theft or fire was in an adjacent freight depot. True, the phrase may sometimes be used in a narrow sense; but there is nothing here in the attendant language to suggest the exceptional use, and, to say the least, such a use would contribute nothing to the reasonableness of the provision as a whole. The phrase is therefore to be understood in the sense in which it is commonly employed.

Upon consideration, I am inclined to the view that the basis of classification intended by Congress must be found in the phrase "by carelessness or negligence." It is used in no other place in the entire section, and in the absence of some other ground for classification it appears to be not improbable that the legislative mind made a distinction between liabilities resulting from the carrier's negligence and those which rest upon a different basis, and accordingly declared that the carrier should not require notice of claims for damages arising out of its own negligence. While, for reasons which it is unnecessary to explain, we may be unable to assent to the wisdom or justice of denying to the carrier this right, such seems to be the intent of the proviso. So far as the facts in this case are concerned, the construction involves no lexical or grammatical difficulties. The damages claimed were not the result of delay or injury in loading or unloading the horses; they were damaged "in transit," as that phrase is ordinarily understood, and by the carelessness and negligence of the carrier, if the averments of the complaint are true. The phrase "carelessness and negligence" undoubtedly qualifies "damaged in transit."

In the case of a claim for damages suffered in the loading or unloading of a shipment, the grammatical relation of the phrase, especially when we consider the punctuation, is more difficult. But in

some particulars the grammatical construction is manifestly defective, and, that being true, it may very well be that the use of a comma is the result of inadvertence rather than of design. If in other respects the structure were artistic, perhaps a different view should be taken; but under the circumstances it is thought we are warranted in entirely ignoring the comma after "unloaded" or inserting it after "transit." In this view the proviso in effect relieves the shipper from giving notice or filing claim for such damages, and such damages only, as result from the carrier's negligence, either in loading the shipment at the point of origin, or in carrying it to the point of destination, or in there unloading it. A claimant must either allege and prove notice, and the filing of a claim, or must allege and prove negligence. Here the plaintiffs have alleged negligence, but neither the giving of notice nor the filing of a claim, and to succeed it will therefore be incumbent upon them to prove negligence.

It follows that the matter in the answer to which their motion is directed is redundant and immaterial, and accordingly the motion will be allowed.