WALTER H. UNDERWOOD, Appellant, *v.* GLOBE INDEMNITY COMPANY, Respondent.

**Insurance (indemnity) — stockbrokers — loss by stockbrokers through delivery of bonds by salesman at house of supposed customer in return for worthless check — covered by policy insuring against loss by theft while property is in transit in custody of employee — negligence in receiving check — transaction covered by provision insuring against loss through negligence of employee while in transit.**

1. A loss sustained by stockbrokers through the delivery by one of their salesmen, to a purchaser, at his house, of bonds in return for a supposedly certified but worthless check, is covered by a policy of indemnity insurance against loss " through robbery, hold-up, or theft, by any person whomsoever, while the Property is in transit within twenty (20) miles of any of the offices covered hereunder,

# 112 UNDERWOOD v. GLOBE INDEMNITY CO.

and in custody of any of the Insured's partners, or any of the employees, or any messenger temporarily employed; or through negligence on the part of any such employee or messenger having custody of the Property while in transit as aforesaid." The bonds were in transit within the meaning of this policy when they were taken out for delivery, and until delivery, in the legal sense of that word, to a customer. The bonds were taken from the salesman by a false token, constituting theft, while he was in the course of making delivery within twenty miles of the office. There had never been a delivery, therefore, to end the transit.

2. If the salesman was negligent in turning over the bonds without examining the check to see whether it was certified, the transaction would be covered by the clause insuring against loss through negligence on the part of an employee having custody of the property while in transit.

*Underwood* v. *Globe Indemnity Co.*, 217 App. Div. 63, reversed.

(Argued April 1, 1927; decided May 3, 1927.)

APPEAL from a judgment, entered July 16, 1926, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Francis R. Holmes, Martin B. Faris* and *Julian S. Eaton* for appellant. The property was obtained from the messenger employed to carry it while in transit. (Williston on Sales, § 526; Personal Property Law, § 139.)

*F. A. W. Ireland* for respondent. There was no loss while the property was in transit. (*Van Vechten* v. *American Eagle Fire Ins. Co.*, 239 N. Y. 303.)

CRANE, J. Paul D. Shields and Frederick F. Bach were stockbrokers, carrying on business of copartnership at 27 Pine street, in the city of New York. On the 20th day of May, 1923, the Globe Indemnity Company issued a policy, called a brokers' basic blanket bond for stockbrokers, wherein the defendant insured Shields & Company against loss as therein specified. By the bond,

the defendants agreed to indemnify the insured, and hold them harmless from and against any loss to an amount not exceeding $50,000 of money, currency, bullion, bonds, debentures, scrip, certificates, warrants, transfers, coupons, bills of exchange, promissory notes, checks or other similar securities sustained by the insured, as follows:

"(A) Through any dishonest act of any of the employees wherever committed, and whether committed directly or by collusion with others.

"(B) Through larceny, whether common law or statutory, robbery, burglary, hold-up, theft, or other fraudulent means, or destruction, misplacement, or mysterious unexplainable disappearance while the Property is within any of the Insured's Offices covered hereunder, or upon the premises of the Insured's Bankers in the United States or in any recognized place of safe deposit in the United States, or lodged or deposited in the United States for exchange, conversion, registration, or transfer, not including, however, the in-transit-risk.

"(C) Through robbery, hold-up, or theft, by any person whomsoever, while the Property is in transit within twenty (20) miles of any of the offices covered hereunder, and in the custody of any of the Insured's partners, or any of the employees, or any messenger temporarily employed; or through negligence on the part of any such employee or messenger having custody of the Property while in transit as aforesaid."

The insured sustained a loss, which the courts below have held not to be within the terms of the policy. It occurred in this way. Michael J. Del Re, a bond salesman of the insured, employed at its office in 27 Pine street, received a telephone call in April of 1924 from a man named Dunn, in reference to some bonds which he desired to purchase. Del Re called upon him at a house in West End avenue, near Eighty-eighth street, and received an order for $2,500 of Liberty bonds, together with one hundred shares of stock. Three days later Del

Re took the bonds to Dunn at the place mentioned, and delivered them to Dunn, receiving in return a check which he supposed to be certified, but which in fact was merely stamped as certified, being unsigned. It was a mere trick of Dunn's, who was a thief, to get the bonds, as the check was valueless. Dunn skipped with the bonds, and has never been found. The face value of the bonds was $2,500. The amount of the check given was $4,500 or $4,700, being the price of the bonds and also the stock, which could not be delivered until paid for and transferred to Dunn's name.

Does the policy cover this loss? Looking at the undertaking as a whole, Shields & Company were insured against the theft of bonds under certain named conditions. Clause "A" provided for a theft by an employee. This theft could occur in the office, or anywhere outside the office. If Del Re had stolen these bonds the policy would have covered the case. Clause "B" covered a theft by anybody from the insured's offices or from a place of safe deposit. Clause "C" covered theft by any person while the property was in transit and in the custody of an employee, or through the negligence on the part of any such employee having custody of the property while in transit.

This latter clause would seem to cover this case. It must be given a fair and reasonable interpretation to cover the risks which the parties had reason to anticipate, and had reason to believe would be met by the policy. Theft by an employee was covered; theft from the offices and safe deposit places was covered; and clause "C" was intended to cover and did cover thefts from employees delivering securities within twenty miles of the office. "In transit" means, in this case, while going to make a delivery to a customer. The bonds were taken from Del Re by a false token, false representations, constituting theft. Theft means larceny or stealing. Dunn stole the bonds from Del Re by reason of false representations,

and a false token. The bonds, while handed over to Dunn, were never delivered to a customer, as Dunn was not a customer, but a thief, posing as a customer in order to steal. He was no more a customer than he would have been if he had grabbed Del Re by the throat and taken the bonds from his custody, in which case he would have committed robbery. Having procured the goods, by trick and device, the crime was larceny; if they had been procured by force, the crime would have been robbery. The policy covered both these offenses; goods taken from a messenger by robbery or theft, while the messenger was in the course of making delivery, or carrying the bonds within twenty miles of the office.

To hold that transit means actual movement, and not a period of rest, is too narrow a construction to give to this undertaking, and is contrary to its full meaning and scope. The courts below have held that the securities would be in transit while Del Re was carrying them in his possession through West End avenue, and up the stairs of the house, but ceased to be in transit when the messenger had arrived at Dunn's rooms or in Dunn's presence to make delivery. The bonds were in transit within the meaning of this policy when they were taken out for delivery, and until delivery, in the legal sense of that word, to a customer. The bonds were in Del Re's possession when they were obtained from him by a trick and false device; title never passed to Dunn; they were procured from Del Re by common-law larceny. Therefore, there had never been a delivery to end the transit. The bonds were still in transit in the process of being taken somewhere for delivery, or to be returned to the office when stolen from Del Re. It was a cash transaction. Delivery was to be made only for cash or a certified check. (*People* v. *Miller*, 169 N. Y. 339; *People* v. *Noblett*, 244 N. Y. 355.)

If Del Re were negligent in turning over these bonds to Dunn without examining the check to see whether it

were certified, the transaction would come within another clause of section " C," as there would be a loss sustained by the insured through negligence on the part of an employee having custody of the property while in transit, or course of delivery.

For these reasons the judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.