GENERAL CAS. CO. OF AMERICA v. GUNION.

No. 1365.

Municipal Court of Appeals for the

District of Columbia.

Argued Aug. 24, 1953.

Decided Oct. 21, 1953.

Rehearing Denied Nov. 12, 1953.

---

5. Tolbert v. United States, D.C.Mun.App., 55 A.2d 91, 93, Appeal Denied by U. S.

Court of Appeals, No. 9668, January 14, 1948.

Denver H. Graham, Washington, D. C., with whom Albert E. Brault, Washington, D. C., was on the brief, for appellant.

Jo V. Morgan, Jr., Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

The insurance company appeals from a judgment rendered against it on a residence theft policy. On five separate occasions over a period of several months the insured, Mrs. Gunion, gave sums of money in her home to one Harton to finance a secret venture proposed by him, to assist her aunt in fleeing Rumania and coming to this country. The venture was in fact a hoax devised by Harton who absconded with the money.

1. See Smith v. National Surety Co., 77 Or. 17, 149 P. 1040; Underwood v. Globe Indemnity Co., 245 N.Y. 111, 156 N.E. 632, 54 A.L.R. 485.

2. The trial court found that the latter sum was given Harton upon the representation that it would be forwarded to Anderson. While the statement of proceedings and evidence might lend some support to this finding, the entire record

Our first question is whether the policy covered the loss. It covered loss by theft and defined theft to include larceny, burglary, robbery and mysterious disappearance. The legal concept of larceny, specifically larceny by trick, covers a situation where one "obtains money from another upon the representation that he will perform certain service therewith for the latter, intending at the time to convert the money, and actually converting it, to his own use". Means v. United States, 62 App.D.C. 118, 119, 65 F.2d 206, 207, quoted in Graham v. United States, 88 U.S.App.D.C. 129, 187 F. 2d 87, certiorari denied 341 U.S. 920, 71 S. Ct. 741, 95 L.Ed. 1353. When the legal concept of a word in a policy favors the insured that concept should be adopted since the insured is entitled to the most favorable reasonable construction. Pennsylvania Indemnity Fire Corp. v. Aldridge, 73 App.D.C. 161, 117 F.2d 774, 133 A.L.R. 914. Therefore we must hold that money given by the insured in her home to Harton upon the fraudulent representations that he would apply it to the special purpose described above was lost through larceny and such loss came within the coverage of the policy.[1] The sums of $350 and $15.93 were given to Harton under such circumstances.

Other sums, however, were given under circumstances not constituting larceny. One sum, $18.53, was given as reimbursement for a supposed telephone call, and another, $100.60, was given as reimbursement for funds supposedly advanced by Harton to a Major Anderson.[2] It was pointed out in Graham v. United States, supra [88 U.S. App.D.C. 129, 187 F.2d 88], quoting from United States v. Patton, 3 Cir., 120 F.2d 73, 76, that there is a distinction " 'between the case of one who gives up possession of a

indicates the sum was given in reimbursement upon the representation that Harton had previously forwarded a like sum to Anderson. This is apparent from the insured's written statement taken by the adjuster and from the fact that the ostensible writing acknowledging receipt of the money from Harton by Anderson bore an earlier date than that on which the insured gave the like amount to Harton.

chattel for a special purpose to another who by converting it to his own use is held to have committed a trespass, and the case of one who, although induced by fraud or trick, nevertheless actually intends that title to the chattel shall pass to the wrongdoer.'" When the insured delivered money to Harton to reimburse him for expenditures claimed by him to have already been made, she intended title to pass to him, although she was induced to do so by his fraudulent representation. These sums cannot be said to have been lost through larceny. For the same reason, the fifth item, $50, which the insured said could be called a loan and which her check stub indicated was a loan to Harton which he was to repay, was not lost through larceny.

■ Our next question is how recovery is limited by the policy's provision that "the limit of the company's liability for loss of money is $100." The company contends that $100 is the maximum that can be recovered and urges that the separate sums given Harton be treated as lost through a single continuous transaction. There is no basis for treating several losses occurring on separate occasions as one merely because one scheme is used to bring them about. We must turn to the words of the policy to ascertain the meaning of the $100 limitation of liability. With reference to the various limitations of liability stated in the policy, the policy provides: "Upon receipt by the company of notice of loss for which the company is liable under this policy, the applicable limit of liability shall be reduced to the extent of the company's liability for such loss, except with respect to loss occurring subsequent to the receipt by the company of such notice." This sentence so far as it relates to the $100 limitation appears to us to mean that the company is liable up to, but not exceeding, $100 for each successive loss of money provided notice of a particular loss is received from the insured prior to a subsequent loss for which recovery is sought.

Promptness in notice of loss would seem to insure a maximum indemnity of $100 for each loss, while delay resulting in notice of several consummated losses would seem to limit recovery to $100 regardless of the total loss.

■ In our case the insured gave reasonably prompt notice of the successive consummated losses after she became aware of them.[3] By the very nature of the loss of money through a fraudulent scheme, an insured may incur successive losses and not acquire knowledge thereof until the scheme is finally detected. We do not believe that the policy required the insured to list each loss as it occurred, notwithstanding her lack of knowledge, in order to have the $100 maximum indemnity apply to each loss. The policy required the insured "Upon knowledge of loss," to "give notice thereof as soon as practicable." Since the insured was not required to give notice of loss until she had knowledge of it, we think that in order to receive the $100 maximum indemnity for each successive loss, she was required only to give notice of each loss prior to the occurrence of any subsequent known loss. The most that can be said in the company's favor is that an ambiguity exists in the policy and the reasonable construction most favorable to the insured must be adopted.[4] Such construction requires us to hold that since the insured gave reasonably prompt notice of her losses after she became aware of them, the $100 maximum indemnity applies to each successive loss. She was therefore entitled to recover $100 of the $350 item and the entire item of $15.93, or a total of $115.93.

■ The company contends that recovery is barred because the insured failed to comply with the policy's requirement that proof of loss be filed within sixty days after its discovery. The company's denial of liability within the sixty day period on the ground that the loss was not covered by the

---

3. We cannot, as the company argues, say that the evidence does not support the court's finding on this question of fact.

4. See Block v. United States Fidelity & Guaranty Co., 316 Mo. 278, 290 S.W. 429, 437–439.

policy constituted a waiver of this requirement.[5]

Finally, the company contends that testimony and correspondence received in evidence should have been excluded as hearsay. We think this testimony and correspondence was relevant circumstantial evidence and not hearsay. For example, the insured's testimony concerning statements made to her by Harton on the occasions when she delivered money to him was relevant in explaining the purpose of the deliveries.[6] We find no error in the admission of evidence.

The judgment below is modified by reducing it to $115.93, with interest from May 12, 1950, and as so modified is affirmed.

Modified and affirmed.

5. Hartford Fire Ins. Co. v. Daniels, 9 Cir., 201 F.2d 787; Maryland Casualty Co. v. Kern County, 9 Cir., 83 F.2d 774; 29 Am.Jur., Insurance, § 1143.

6. 6 Wigmore, Evidence (3d ed. 1940) § 1777.