**J & C DRUG COMPANY, Inc., Barby Drug Company, Inc., and Bren Drug Company, Inc., all Corporations (Plaintiffs), Respondents,**

**MARYLAND CASUALTY COMPANY, a Corporation (Defendant), Appellant.**

No. 29640.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Motion for Rehearing or to Transfer to Supreme Court Denied March 5, 1957.

John S. Marsalek, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for appellant.

Gilbert Weiss, St. Louis, Lindauer, Lindauer, Pessin & Nieman, Belleville, Ill., for respondents.

WOLFE, Commissioner.

This is an action on three policies of insurance. Each of the plaintiffs had one of these policies which insured it against loss of money occasioned by robbery "from a messenger while conveying" money "outside of the premises". Money which had been collected from all of the three plaintiffs for deposit in the bank was stolen and each seeks recovery for its respective share. The trial was to the court and from a judgment in favor of each plaintiff for the amount of its respective policy the defendant prosecutes this appeal.

The facts of the matter are that each of the corporations are engaged in the retail drug business. They are owned and controlled by the same persons. All three companies are located in St. Louis County. The J & C Drug Company is located on Page Boulevard, Bren Drug Company on St. Charles Road, and Barby Drug Company on West Florissant. There was a fourth drug company owned by the same persons. This was named Sands Drug Company, and it was located on West Florissant, a short distance from the Barby Drug Company.

Benjamin D. Pessin was an officer in all of the companies. It was customary for either him or his brother Jim, who was also connected with the corporations, to gather the receipts of all the four stores at one of the drug stores and then to take the receipts to the Cass Avenue Bank located in downtown St. Louis. Benjamin Pessin at the time he made the deposits would also get from the bank the silver money needed by the stores for making change.

Pessin lived in University City and on the morning of April 12, 1954, he had at his home the receipts of the Sands Drug Company for Saturday, April 10; and receipts of the Barby Drug Company for both Friday and Saturday. These were in separate envelopes with deposit slips made out so that the money was ready for deposit to the account of the company to which it belonged.

Pessin left his home shortly after seven o'clock on Monday, April 12, taking with him the Barby store and the Sands store receipts mentioned, and went to the J & C Drug Company on Page Avenue. There he picked up two more envelopes containing money ready for deposit. One of these contained the J & C Drug Store's receipts and the other envelope, which had been brought there previously, contained the receipts of the Bren store. From the J & C store he drove to the Sands store on West Florissant and arrived there about 7:57. He had the money belonging to the plaintiffs in his pocket. He parked his car on the drug store parking lot and went to the store door. The door was locked and he opened it and turned off a burglar alarm with which the store was equipped. The porter who worked at the store was waiting for admittance and entered with Pessin. After they were in the store Pessin again locked the door.

The premises occupied by the Sands Drug Company are on the southwest corner of West Florissant and Gaylord Street. The store is about 115 feet long and about 30 feet in width. The entrance is in the northeast corner of the building. Back 100 feet from the front of the store is a

partition which walls off the 15 feet in the rear from the front part used by patrons. There is a doorway into the area in the rear and in this area an office is partitioned off. This office has a door that is kept locked and in the office is a safe with a combination lock.

After Pessin had locked the front door he went to the back office and put all of the envelopes containing the money into the safe. He closed the safe and spun the dial. He then went back into the store part of the building and unlocked the front door and turned on the store lights. Ordinarily the store manager arrived at eight o'clock, but he was late this day. A customer came in and bought a package of cigarettes. Pessin waited on him. Then a man named Ford came in and talked about some advertising that the stores were running in a paper called the Wellston Journal. Ford had "lay-out sheets" of the advertising for the various stores and these sheets were spread upon some beer cases that were about 70 feet from the front of the store. Ford and Pessin were talking about these when another man entered the store and went to the cigar counter. Pessin went forward to serve him and the man bought two cigars and left. Pessin resumed his conversation with Ford about advertising and in a few minutes another man came in and went to the cigar counter. Pessin went to wait on him and when he asked the man what he wanted the man drew a gun and told Pessin that it was a holdup. The other person who had previously bought cigars came back into the store and assisted in the robbery that followed. The two men made Ford and the porter lie on the floor and walked Pessin to the back office and made him open the safe. They took all of the money from the safe and then went to the store area and emptied two cash registers before departing. Just after they had left the store manager arrived. Pessin called the sheriff's office and told of the occurrence.

The money taken from the safe belonging to the J & C Drug Company amounted to $4,389.85; that belonging to the Barby Drug Company amounted to $2,868.68; and the sum belonging to the Bren Drug Company was $3,593.67. It was admitted by the defendant that the Bren Drug Company and the J & C Drug Company each had a policy which limited recovery to $2,500, and that the Barby Drug Company had a policy which limited recovery to $750. As stated, the judgment was in favor of the plaintiffs for the limits of their respective policies.

The sole question to be resolved has to do with the meaning of the clause in the policies which insured against the loss of money "occurring outside the premises * * * while being conveyed by a messenger". The money was outside the premises of the insured plaintiffs and on this score there is no dispute. There is no question raised about Pessin qualifying as a messenger under the terms of the policies. The defendant does contend that Pessin was neither acting as a messenger nor "conveying" the money at the time of the holdup. The plaintiffs conversely maintain that since the money had left its point of origin and had not yet reached the bank, it was still being "conveyed" even though it was in the safe of the Sands Drug Company at the time the robbery took place.

The plaintiffs, in support of this contention, cite us to a number of cases dealing with a variety of insurance policies, but they rely chiefly on Underwood v. Globe Indemnity Co., 245 N.Y. 111, 156 N.E. 632, 54 A.L.R. 485; Hailey v. Oregon Short Line R. Co., D.C., 253 F. 569; Fox West Coast Theatres v. Union Indemnity Co., 167 Wash. 319, 9 P.2d 78; International Harvester Co. v. National Surety Co., 7 Cir., 44 F.2d 746. These cases are for the most part quite different from the one under consideration. Hailey v. Oregon Short Line R. Co., 253 F. 569, District Court of Iowa, deals with the construction of a shipping contract and holds that goods are "in transit" all of the time after their delivery to the carrier until delivery to their destination. Fox West Coast Theatres v.

Union Indemnity Co., 167 Wash. 319, 9 P.2d 78, 80, was a suit on a robbery policy which allowed recovery where a robbery was effected "by violence inflicted upon the custodian or custodians in the actual care and custody at the time". The custodians were forced to open a safe where they, in the exercise of their care and custody, had placed the money for which recovery was sought. The court held that the money was in the care and custody of the managers of the theatre at the time they were forced to open the safe. International Harvester Co. v. National Surety Co., 7 Cir., 44 F.2d 746, was an action on a payroll robbery policy insuring against loss by robbery from the care or custody of any employee of the insured "while receiving, handling, conveying and distributing" payroll money. The money was in a sealed chest that had been placed in a locked room by guards that had delivered it. It was held that handling did not necessarily mean physical contact with the money but that the word was broad enough to cover the money intended for the payroll from the time it was "separated for that purpose until received by the employees." Underwood v. Globe Indemnity Co., 245 N.Y. 111, 156 N.E. 632, 633, 54 A.L.R. 485. New York Court of Appeals allowed recovery on a policy which covered a robbery or theft of money or securities "in transit within 20 miles of any of the offices covered hereunder, and in the custody of any of the insureds' partners, or any of the employees * * *". An employee was tricked into surrendering bonds by a false device. The bonds were taken from his possession by a purported customer who was in fact a thief.

The constructions placed upon the words "in transit", "handling" and "care and custody" by the above cases have no bearing upon the meaning of the words "while being conveyed". It seems quite obvious that "handling" and "care and custody" are not in any way synonymous with the words "while being conveyed". Of all the words and phrases mentioned perhaps the closest to the one we are considering is the phrase "in transit". This, however, has acquired a broad significance. Its meaning is described as follows: "Goods shipped from one person to another are said to be in transit from the time when delivered to the carrier by the consignor to that when actually or constructively delivered to the consignee." Merriam-Webster International Dictionary, 2d Edition. The word "convey" is defined by the same dictionary as "To bear from one place to another; to carry; transport."

■ The law relating to the construction of insurance policies is well settled. If the language of the policy is plain and unambiguous, the words must be given their commonly accepted meaning. State ex rel. Mutual Life Ins. Co. of New York v. Shain, 344 Mo. 276, 126 S.W.2d 181; Walker v. General American Life Ins. Co., Mo.Sup., 141 S.W.2d 785; Graham v. Gardner, Mo.App., 233 S.W.2d 797. The appellate court of Illinois, in Philip Blum & Co. v. Standard Accident Insurance Co., 336 Ill.App. 354, 83 N.E.2d 605, applied the above rule in relation to a policy which insured property against robbery " 'while being conveyed by a chauffeur or driver' ". There was a theft of safes which were being moved by trucks and during the journey the trucks had been put overnight in a garage. While the trucks were in the garage the theft occurred. It was held that the words did not cover a period of temporary storage and that the insured was not liable. The court held that the word "while" should be construed as "during the time", and that the goods were not stolen during the time they were being conveyed by a chauffeur or driver.

■ In the case under consideration Pessin had conveyed the money to the Sands Drug store where he placed it in a safe. He had then turned his attention and activities to the business of running the store. It was during this time that the holdup occurred and the fact that Pessin had intended to take the money to the bank later did not make him a messenger

at the time of the robbery, nor was the money being conveyed.

For the reasons stated, it is the recommendation of your Commissioner that the judgment be reversed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly reversed.

ANDERSON, P. J., MATTHES, J., and JAMES D. CLEMENS, Special Judge, concur.