**58**

**John RUPP, D/B/A Rupp Brothers Oil Company, Respondent,**

v.

**The HANOVER FIRE INSURANCE COMPANY, Appellant.**

No. 22696.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

Nolan M. Chapman, Don Chapman, Nolan M. Chapman, Jr., Don Chapman, Jr., Chillicothe, for appellant.

J. P. Morgan, Chillicothe, for respondent.

BROADDUS, Presiding Judge.

This is an action on a policy of insurance for the loss by fire of a cargo of gasoline. Plaintiff had judgment for the sum of $594.41, and defendant appealed. The cause was submitted to the court on the following stipulation of facts:

"1. That the policy was in force and premium paid. The policy and all endorsements shall be offered and considered in evidence.

"2. That the vehicle involved was scheduled by the policy and owned and cargo thereon was owned by the plaintiff.

"3. That on May 5, 1951, the plaintiff by his agent left Chillicothe, Missouri, hauling 4,186 gallons of regular and 760 gallons of Ethyl gasoline to Todd's Service Station in Salisbury, Missouri. That Todd's Service Station at Salisbury is within a radius of 150 miles of plaintiff's address, Chillicothe, Missouri.

"4. That after the arrival of the transporting vehicle at Salisbury, said tank vehicle was being discharged into the storage tanks of Todd's Service Station. The vehicle had completed the transportation movement.

"5. That about 5:00 o'clock, May 15, 1951, while gasoline was being discharged into the storage tank of Todd's Service Station from the trailer, gasoline suddenly shot out of the air vent on the station's storage tank. The driver of the trailer (Rupp's agent) immediately went to the cab of the tractor to turn off the ignition and as he arrived there (at cab) gasoline was pouring out of the air vent into flames. That he (the driver) went to the trailer and shut the outlet valves.

"6. That 4,171 gallons of gasoline had been unloaded into the storage tank of

Todd's Service Station. That discharge into the storage tank constituted delivery of the gasoline. That there were 760 gallons of Ethyl gasoline in the truck after the fire.

"7. That the value of the gasoline was 14.2 cents per gallon.

"8. That proof of loss was duly made and liability denied. That the parties or either of them may offer evidence of further facts."

In addition to said stipulation of facts, John Rupp, plaintiff, testified that he was on May 15, 1951, owner of a 1949 White tractor and trailer; that the number of gallons of regular gasoline that were remaining in the tank truck at the time of the fire was 15 gallons. Mr. Rupp testified that the 15 gallons also burned at the same time as the gasoline burned that was in the underground storage tank; that the gasoline was being discharged from the truck by hooking up the hose of the transport compartment of the truck to the unloading pipe on the tank using the truck motor as power to pump it from the transport compartment into the storage tank on the premises. The policy of insurance issued by the appellant to the respondent was admitted in evidence.

The insuring clause of the policy is as follows:

"Against direct loss or damage by the risks and perils hereby insured against, to all kinds of lawful goods and merchandise, consisting principally of gasoline, oil and grease, the property of the assured, or held by the assured on commission or consignment, or on which the plaintiff has made advances or sold but not delivered.

"While the goods and/or merchandise are in the custody and control of the Assured and are:

"In or on the within described motor trucks owned and operated by the Assured.

"(1) In transit between points and/or places within a radius of 150 miles of Assured's address as shown herein, and/or (2) Temporarily located in garage or garages for a period of time not exceeding twenty-four (24) hours, plus intervening Sunday or Legal Holidays, but only while actually in transit in the custody and control of the Assured."

Defendant-appellant contends that the trial court erred in rendering judgment for plaintiff because, "In order for plaintiff to recover it is necessary that the gasoline be destroyed while 'in or on' the vehicle and while the gasoline was 'actually in transit' "; that the facts show that 4,171 gallons of regular gasoline had been discharged into the storage tanks, and thus no longer "in or on" the truck of the plaintiff and no longer "actually in transit."

We are aware of no case on all fours with the case at bar.

As is to be seen the first paragraph of the insuring clause covers direct loss of gasoline sold "but not delivered." Appellant lays stress upon the words appearing in the remaining portions of the clause, to-wit: "in or on" assured's truck and "only while actually in transit."

The case of Loesch v. Union Casualty & Surety Company, 176 Mo. 654, 75 S.W. 621, 624, dealt with the words "in transit." The policy of insurance involved in that case designated insured's occupation as "stock dealer, not working nor tending in transit." It called for a death benefit of $5,000 arising out of accidental injuries, but provided that if insured was in fact a "stock dealer, * * * tending in transit" the limit of insurance was $1,250. There a railroad car loaded with cattle was stopped at the cattle pens, and all but two head had been taken from the car to the pens. One of the two remaining in the car injured the insured. As is to be seen from the opinion the amount of recovery for insured's death was dependent upon

whether or not the cattle were in transit. The court said:

"The plaintiff's evidence did not show that he had traveled on the train with the cattle, but it did show that he was in the car attending to them before they were unloaded. Until the cattle were out of the hands of the railroad company and in the pens of the stockyards they were in transit."

The words "out of the hands of" are significant in that plaintiff's driver in the instant case at the time of the fire in question was still in complete charge of the unloading operation. The hose from the truck was still in the purchaser's tank and the gasoline already discharged into the same would of necessity still be in movement so long as more was being pumped into it.

Appellant cites and quotes at length from the case of Koshland v. Columbia Insurance Company, 237 Mass. 467, 130 N.E. 41, 43. The crucial point in that case was whether or not wool stopped in route and placed "in the mill and warehouses at Stockton for the purpose of scouring, grading, blending and baling" was actually in transit. That is a different situation from the one appearing in the instant case.

The case of Underwood v. Globe Indemnity Company, 245 N.Y. 111, 156 N.E. 632, 634, 54 A.L.R. 485, throws some light on the question before us. The policy involved in that case covered theft by any person while the property was in transit and in the custody of an employee of the insured. There bonds were being delivered and the messenger delivered them to a would-be purchaser through the fraud of the purchaser. The defendant contended that the coverage ceased at such time as the messenger arrived at the residence of the would-be purchaser and that the in transit coverage would not include the act of handing over the bonds. The court said:

"The bonds were in transit within the meaning of this policy when they were taken out for delivery, and until delivery, in the legal sense of the word, to a customer * * * therefore, there had never been a delivery to end the transit."

Appellant places particular stress upon the statement contained in the stipulation of facts that: "The vehicle had completed the transportation movement." We do not regard that fact to be of real significance, because the policy covered the cargo, *not the vehicle*. As we view it, the cargo of gasoline was in transit until such time as a delivery had been made.

Was the gasoline delivered at the time the fire broke out? In the law of sales, delivery means the transfer of the possession of personal property from one person to another. Black's Law Dictionary, p. 548. The parties have stipulated that "discharge into the storage tank constituted delivery", and that "while gasoline was being discharged into the storage tank" the flames appeared. The cargo consisted of 4,186 gallons of regular gasoline. All of it had been sold to Todd's Service Station. But before *all* of it was "discharged into the storage tank" the fire occurred. In other words, there had only been a partial delivery. The gasoline was, in fact, destroyed while it was in the process of being delivered.

In the early case of Rochester & O. Oil Company v. Hughey, reported in 56 Pa. 322, the defendant Hughey purchased of the plaintiff oil company four barges of oil at $4.50 per barrel; the barges were furnished by Hughey and were partially filled, when the barges and oil were burned. The court held that "there was no delivery of any oil. 2. The property of the oil in a partially laden barge in progress of being filled does not pass as fast as the oil enters the barge."

We agree with respondent's position as thus expressed in his brief: "Until the entire load had been delivered there could not have been any control by the purchaser * * *." Delivery could only have been

completed at such time as the last gasoline had been discharged and respondent's truck hose disconnected from purchaser's storage tank. To find otherwise would be too restrictive an interpretation and would result in a very unique concept of delivery. If not delivered, the only alternative is that the gasoline destroyed was still in transit.

The judgment should be, and is, affirmed. All concur.