## Brown v. American Casualty Company of Reading

*Lewis Jay Gordon,* for plaintiff.

*Norman Paul Harvey,* for defendant.

STOUT, J., April 29, 1964.—Plaintiffs, meat jobbers, were insured by defendants under an inland marine

policy bearing a motor truck cargo theft endorsement. The policy covered "lawful goods and merchandise consisting principally of meats . . . while loaded for shipment and in transit in or on vehicles . . . owned and operated by the assured, while in the custody and control of the assured. . . ." The Motor Truck Cargo theft endorsement excluded, among other things, liability of the company "for theft of the insured property while left unattended in or on any vehicle unless such vehicle is equipped with a fully enclosed body which shall have been securely locked, and the loss be a direct result of violent forcible entry (of which there shall be visible evidence)." Plaintiffs alleged that loss by theft from the truck occurred while it was in the course of delivery, loaded for shipment and in transit. Defendant denies that it was in course of delivery or in transit but contends, on the contrary, that the loss occurred while the truck was stored and that, therefore, the loss was not within the coverage of the policy.

The case was heard on a stipulation of facts, with respect to liability, and oral argument before the court sitting without a jury.

Plaintiffs take orders from retail storekeepers and fill them with meat purchased from wholesale meat dealers. Meats purchased from the wholesalers are placed on refrigerated trucks for delivery. Deliveries are made during regular business hours and, at the close of business the refrigerated trucks, with any undelivered cargo, are placed in a garage, which is rented by plaintiffs, to be picked up the next business day for completion of delivery.

On two occasions, while so placed, the refrigerated truck was burglarized. One occasion was overnight, February 6-7, 1961; the other was over a weekend, January 13-16, 1961.

Defendant denies liability on the inland marine policy contending that, when the theft occurred, the

goods were not "in transit," but in storage instead.

This case construing the phrase "in transit" in inland marine insurance appears to be one of first impression in Pennsylvania. We turn therefore to other jurisdictions for guidance as to its meaning.

Preliminarily, we do not interpret "in transit" to mean actual movement: Hailey v. Oregon Short Line R. Co., 253 Fed. 569, 571 (1918), has taught us that, "To say that the phrase 'in transit' is applicable only while a shipment is actually moving is to give to it an unusual and strained construction." See also Underwood v. Globe Indemnity Co., 245 N. Y. 111, 115, 156 N. E. 632, 634, 54 A. L. R. 485, and Kessler Export Corp. v. Reliance Ins. Co., 207 F. Supp. 355, 358 (U. S. D. C., E. D., N. Y., 1962), 310 F. 2d 936 (1962). Moreover, the language of The Motor Truck Cargo theft endorsement excluding liability for theft of the property while left unattended in any vehicle unless certain security precautions were taken seems to contemplate situations other than actual movement.

The first question for decision is whether the cargo remained "in transit" despite the over-night and weekend cessations of movement. While each decision rests on its own peculiar facts, an examination of the cases indicates, first, that "transit" must have begun and, secondly, that once begun the purpose and duration of the interruptions are the determinative guideposts of whether "transit" continues.

It is obvious that goods loaded and awaiting movement are in preshipment storage and not in transit. See San-Nap-Pak-Manufacturing Co. v. Fireman's Ins. Co., 47 N. Y. S. 2d 542, affd. 51 N. Y. S. 2d 754 (1944), where trucks loaded on Saturday and left at place of loading to begin movement on Monday were held to be in storage and not in transit. See also Mayflower Dairy Products v. Fidelity-Phenix Fire Ins. Co., 170 Misc. 2, 9 N. Y. S. 2d 892 (1938), where trucks

returned daily to the terminal for loading and remained until delivery time the following morning. Theft from the truck in the terminal overnight was held to be a theft while in storage and not in transit.

Once transit has begun, certain interruptions may occur without changing the transit status. Necessary interruptions caused by accident will not change the transit status. See Gulf Insurance Company v. Ball, 324 S. W. 2d 605 (Tex. Civ. App. 1959), where a truck left over two days in a ditch where it had been forced to avoid an accident was held not to have been abandoned and to be "in transit." Neither will interruptions caused by mechanical failure change the status. See Koury v. Providence-Washington Ins. Co., 50 R. I. 118, 145 Atl. 448 (1929) where "transit" continued while truck loaded with cargo was locked overnight in a garage because of failing headlights. Nor will return of cargo to garage for overnight stay, when delivery could not be made because of lateness of the hour, remove it from transit: J. G. Ries & Sons, Inc. v. Automobile Ins. Co., 121 N. J. L. 493, 3 A. 2d 610 (1939). There the court said:

"It is argued by the respondent and the court below held that . . . storing the metal in the garage was not carrying it. That construction, we think, is quite too narrow. . . . The fact that the insured, for the more effective performance of its duty as carrier, interrupted the course of its vehicle and housed it, with its contents loaded thereon, overnight does not, in our opinion, change his position as a common carrier. We think that within the significance of the words in the insurance contract the truck was carrying the goods. The act of transportation had begun at the pier. The destination was at Bloomfield."

On the other hand, "transit" is terminated when a driver takes a frolic of his own: Druss Stores, Inc. v. Travelers Indemnity Co., 206 N. Y. S. 2d 236 (1960).

(Driver parked loaded station wagon in front of his home over the weekend for his own convenience after having by-passed his employer's place of business). It is terminated when goods are abandoned; when they are delayed for a period of time for purposes unrelated to transportation: Dealers Dairy Products Co. v. Royal Ins. Co., 170 Ohio St. 336, 164 N. E. 2d 745, 80 A. L. R. 2d 441 (1960) (Machinery stolen after being unloaded en route while carrier was diverted for two days to other duty); or when they are stored: Exchange Lemon Products Co. v. Home Ins. Co., 235 F. 2d 558 (9th Cir., 1956), (Goods held in warehouse eight months awaiting eventual sale and transportation).

Under the facts of this case no question of preshipment storage is involved. Transit status attached when plaintiff took the cargo from the wholesale distributor. It continued until delivery to the retailers. Transit of the cargo undelivered at the close of business one day did not end but continued until the next business day, whether overnight or over the weekend. Such interruption was necessary to and an incident of the transportation of the undelivered meat. It was not an interruption for loading additional cargo, as to which the theory of preshipment storage would apply, but was a necessary interruption in the ongoing delivery of cargo which entered into transit upon leaving the wholesaler.

Since transit, once begun, continues until delivery, the kind of interruption which will take cargo out of transit must be an interruption of such duration and nature as not to be incidental to the transit itself. Stoppage, or storage, at the close of one business day to await delivery the next business day is not such interruption.[1]

---

[1] See generally Wolfe, "In Transit—A Definition," 29 Brooklyn Law Review 218 (1963) and Daynard, "In Transit," 1962 Ins. L.J. 161.

Defendant contends also that plaintiff failed to maintain "custody and control" of the cargo while the truck on which it was loaded was in the garage. This contention too is without merit.

The "custody and control" necessary to support coverage under a policy of inland marine insurance is legal custody and control. In Koury v. Providence-Washington Ins. Co., supra, Justice Barrows, speaking for the Supreme Court of Rhode Island, said:

"It seems to us that a construction of these words favorably to the insured requires recognition that the insured is covered so long as the goods are within his legal custody and control. Adoption of defendant's construction [that the words "custody and control" mean "custody and possession" as urged by the defendant] would so far reduce the insurer's liability as to render the policy a very small protection to a truckman. The result of the defendant's strict construction of the language would be to protect the carrier only while he had actual physical dominion over the property in transit": 50 R. I. 118, 123, 145 Atl. 448, 450.

Here, plaintiff retained legal "custody and control" of the cargo which remained on the truck while parked in the garage. Compare Taylor v. Philadelphia Parking Authority, 398 Pa. 9, 156 A. 2d 525 (1959), where there had been no surrender of custody and control with Sun Ins. Office, Ltd. of London v. Be-Mac Transport Co., 132 F. 2d 535 (8th Cir. 1942), where surrender of custody and control had been effected.

Defendant is liable, therefore, for plaintiff's loss.