OPINION OF THE COURT
Saxe, J.
Plaintiffs seek coverage under the “In Transit” clause of an insurance bond they purchased from defendant Vigilant Insurance Company, for losses they sustained due to an embezzlement scheme perpetrated by the principals of nonparty Mount Vernon Money Center (MVMC), an armored car company. The larcenies were perpetrated while plaintiffs’ cash was being processed at MVMC’s vault, en route between the Federal Reserve Bank and plaintiffs’ check-cashing businesses and ATMs. The insurer disclaimed coverage, and in this declaratory judgment action, both sides moved for summary judgment. The *148 motion court held that the bond in question does not cover the circumstances of this theft; we reverse and declare that the insurer has an obligation to provide coverage to plaintiffs under the bond.
The essential facts are undisputed. Plaintiff Metropolitan National Bank (Metropolitan) is a federally chartered national bank; it owns coplaintiff CashZone Check Cashing Corporation (CashZone), a check cashing agency. On or about January 6, 2006, CashZone entered into an “Armored Car Service Agreement” with MVMC, under which MVMC would retrieve currency on CashZone’s behalf from the Federal Reserve Bank of New York, Monday through Friday, and take the money to the MVMC vault, where it would be sorted, counted, and bundled for delivery to plaintiffs’ financial centers; cash for plaintiffs’ ATMs would be loaded into ATM cassettes. At plaintiffs’ ATM locations, MVMC would replace the ATM cassettes that had been in the machines with replenished ATM cassettes. MVMC agreed to maintain custody of CashZone’s funds at all times from its pickup from the Federal Reserve Bank to its delivery to CashZone’s facilities and not to commingle funds with its own funds or with other customers’ funds. CashZone’s predecessor-in-interest, G&R Check Cashing Corporation, also had an “ATM Management Service Agreement” with MVMC effective January 6, 2003, under which MVMC would provide scheduled cash replenishment services for G&R’s ATMs.
MVMC owned and operated several cash vaults within which it processed the cash collected from the Federal Reserve Bank in preparation for its ultimate delivery, along with the residual cash remaining in the retrieved ATM cassettes. On a weekly basis, MVMC held tens of millions of dollars for its customers for a certain period of time.
The embezzlement scheme that resulted in plaintiffs’ losses was devised by Robert Egan, the president and sole shareholder of MVMC, with the assistance of Bernard McGarry, MVMC’s chief operating officer. Egan and McGarry arranged to use their customers’ funds to finance MVMC’s business operations, commingling customer funds to help conceal their misappropriation of the stolen funds, a practice referred to by plaintiffs and by the prosecutor in the criminal prosecution of Egan and McGarry as “playing the float” (see United States v Egan, 811 F Supp 2d 829, 833 [SD NY 2011]).
Egan was first charged with bank fraud in a criminal complaint on February 8, 2010, and he and McGarry were *149 indicted in March 2010. Both men ultimately pleaded guilty to bank fraud and conspiracy. CashZone and Metropolitan, upon learning of Egan’s arrest, calculated their losses to be approximately $446,564.12. In April 2010, plaintiffs tendered proof of that loss with their claim to the insurer, seeking payment under the “In Transit” clause of the insurance bond the insurer had issued.
The insurance bond under which plaintiffs make their claim was effective from April 22, 2009 to April 22, 2010. The provision of the bond that plaintiffs claim covers this situation is clause 3, the “In Transit” clause. It provided that the insurer would pay Metropolitan for:
“3. Loss of Property resulting directly from common law or statutory larceny, misplacement, mysterious unexplainable disappearance, damage or destruction, while the Property is in transit anywhere:
“A. in an armored motor vehicle, including loading and unloading thereof,
“B. in the custody of a natural person acting as a messenger of the ASSURED, or
“C. in the custody of a Transportation Company and being transported in a conveyance other than an armored motor vehicle, provided, however, that covered Property transported in such manner is limited to [records, securities and negotiable instruments].
“Coverage under this INSURING CLAUSE begins immediately on the receipt of such Property by the natural person or Transportation Company and ends immediately on delivery to the premises of the addressee or to any representative of the addressee located anywhere.”
The insurer denied coverage of plaintiffs’ loss, reasoning that at the time of the loss, the property at issue had not been “in transit” as that term is defined by the bond, but, rather, had been within the vault of MVMC. Plaintiffs then commenced this action for a declaration that their loss of $446,564.12 was covered under the “In Transit” clause of the insurance bond and damages for breach of contract. Plaintiff moved for partial summary judgment seeking recovery under the bond; insofar as *150 is relevant to this appeal, the insurer moved for summary judgment dismissing the complaint and a declaration that it was not obligated to provide coverage under the bond.
The motion court denied plaintiffs’ motion and granted the insurer’s motion, declaring that the insurer was not obligated to provide coverage under the “In Transit” clause of the bond. It reasoned that paragraph 3 (A) of the “In Transit” clause did not cover the larceny at issue here, since the money was not stolen while it was in an armored vehicle or while the vehicle was being loaded or unloaded, or during an incidental stop, but, rather, during a substantive interruption of the transit process, while the money was inside MVMC’s premises for sorting and processing. Coverage for “In Transit” losses began, the court held, when MVMC picked up the money at the Federal Reserve Bank, and ended when MVMC delivered the currency to the MVMC vault for sorting and processing prior to delivery to ATMs; transit then resumed when the cash was taken from the MVMC vault and placed in an armored vehicle, and ended when delivery to plaintiffs’ facility was complete. Whether the stopover at the vault was completed on the same day as the pickup from the Federal Reserve Bank, or lasted overnight, the court said, it was more than an “incidental” interruption of transit.
For the reasons that follow, we hold that the “In Transit” clause of the bond covers plaintiffs’ loss.
The insurer relies on the unreported case of Actors Fed. Credit Union v CUMIS Ins. Socy., Inc. (US Dist Ct, SD NY, 11 Civ 2129, Nathan, J., Sept. 17, 2012) for the proposition that the “in transit” language unambiguously limits coverage to the period during which the funds are either in an armored vehicle or being loaded onto or unloaded from that vehicle. It also cites Palm Desert Natl. Bank v Federal Ins. Co. (473 F Supp 2d 1044 [CD Cal 2007], affd 300 Fed Appx 554 [9th Cir 2008]), as well as cases from other jurisdictions, for the proposition that “in transit” coverage extends to thefts outside of the armored car itself only when they occur during incidental stops in transit, such as for meals, gas, or during overnight stops (see Tivoli Corp. v Jewelers Mut. Ins. Co., 932 SW2d 704 [Tex Ct App 1996]; Ore & Chem. Corp. v Eagle Star Ins. Co., Ltd., 489 F2d 455 [2d Cir 1973]; United Bank of Pueblo v Hartford Acc. & Indem. Co., 529 F2d 490 [10th Cir 1976]).
However, our analysis requires us to determine, and apply, the controlling case law of this State; rulings by courts of other jurisdictions, even where they apply New York law, are not con *151 trolling on this Court (see 28 NY Jur 2d, Courts and Judges § 230). The question presented, namely, the proper construction of the term “in transit” in the context of transportation insurance coverage, is a settled point of law in New York.
An “In Transit” provision was discussed and interpreted in the controlling case of Underwood v Globe Indem. Co. (245 NY 111 [1927]). In Underwood, a bond salesman who was attempting to arrange a bond sale to a potential buyer brought the bonds from Pine Street, in Lower Manhattan, to West End Avenue near 88th Street, where the buyer gave him a worthless check that had been forged to appear certified, in exchange for the bonds. When the buyer absconded with the bonds, the seller made a claim under a policy for the theft of the bonds while “in transit.” The Court concluded that the transit of the bonds was never completed, because the completion of transit would have involved a lawful transfer of title, whereas the bonds had been taken “by a trick and false device,” without a valid transfer of title (id. at 115). The Court reasoned that “[t]o hold that transit means actual movement, and not a period of rest, is too narrow a construction to give to this undertaking, and is contrary to its full meaning and scope” (id.).
The Underwood analysis was at the heart of the determination in Franklin v Washington Gen. Ins. Corp. (62 Misc 2d 965 [Sup Ct, NY County 1970], affd 36 AD2d 688 [1st Dept 1971]), a determination affirmed by this Court, holding that the test for whether something is “in transit” is “whether the goods, even though temporarily at rest, were still on their way, with the stoppage being merely incidental to the main purpose of delivery” (id. at 966-967).
As one New York practice treatise explains, under New York law:
“Once the transportation of the goods has started, the property remains protected under the policy during the ordinary delays in transshipments incident to such movements. In consonance with the foregoing statement, the term ‘in transit’ in a policy insuring a broker against theft while property is in transit means while the property is in the possession of a messenger making delivery to a customer, and is not confined to periods of actual movement, but includes periods of rest during the progress of the continuous undertaking.
“Whether an interruption in actual transit is suf *152 ficient to remove the goods from coverage depends on the extent and purpose of the interruption and the context of the risk contemplated. The temporary interruption for purposes related to the carriage itself does not remove the property from transportation. The true test is whether the goods, even though temporarily at rest, were still on their way with the stoppage being merely incidental to the main purpose of the delivery” (Anne M. Payne & Joseph Wilson, New York Insurance Law § 19:35 at 680 [31 West’s NY Prac Series, 2013-2014 ed]).
Applying these principles of New York law to the instant case, the “In Transit” provision of the bond must be understood to cover the loss here. MVMC was responsible for picking up the cash from the Federal Reserve Bank and delivering it to Cash-Zone locations. As in Underwood, the transit process was never completed for the portion of the funds that, through the “trick and false device” of failing to segregate the funds as required, MVMC instead commingled them in order to facilitate and conceal its larceny. The transit for those funds was never completed.
We reject the argument pressed by the insurer, that the “In Transit” clause provided for coverage in the armored car scenario only when the money was inside of, or being loaded onto or unloaded from, an “armored vehicle.” In our view, MVMC’s act of collecting money from the Federal Reserve Bank and transporting it to an MVMC vault, in order to place it in the form necessary for its transportation and delivery to the Cash-Zone locations, was one continuous shipment process. The stop at MVMC’s vault was expressly understood by all concerned as a necessary component of the act of delivery of cash by armored car from the Federal Reserve Bank to plaintiffs’ locations. As long as the cash remained in the possession of the armored car service making the delivery, and the stop was in service to that delivery, we consider the property to have been “in transit” until the contemplated delivery was completed.
The insurer’s reliance on Palm Desert Natl. Bank (473 F Supp 2d at 1044) is misplaced. Notably, the California district court in that case expressly declined to adopt New York state’s broad definition of “in transit” {id. at 1049), and instead based its ruling on California precedent employing a narrower test, i.e., determining whether the stoppage was for purposes of conducting “further work” (see id. at 1048, citing Aetna Cas. & Sur. Co. *153 v Burbank Generators, Inc., 121 Cal App 3d 813, 816, 175 Cal Rptr 568, 570 [1981]).
The insurer’s reliance on the unreported opinion of the District Court for the Southern District of New York in Actors Fed. Credit Union is also unavailing. In that case, the insuring clause stated that the insurer would provide coverage while the money was “physically in transit” in the custody of an armored vehicle, with transit “begin[ning] immediately upon receipt of the ‘covered property’ by . . . such armored vehicle company, and end[ing] immediately upon delivery at the destination.” The court, taking note of the New York rule, did not conclude that the transit process ceased as a matter of law during a stopover at MVMC’s vault; rather, it denied summary judgment, finding questions of fact concerning, inter alla, whether the In Transit provision’s coverage terminated during that stopover (id.).
While the concept of an “incidental” stop in delivery is included in the defining characteristics of “in transit” under New York law (see Franklin v Washington Gen. Ins., 62 Misc 2d at 966; Ben Pulitzer Creations v Phoenix Ins. Co., 47 Misc 2d 801, 803 [Civ Ct, NY County 1965]), we decline to adopt the proposed semantic distinction between “substantive” and “incidental” interruptions so as to require a different result for the stop at issue here. The interruption in the transit process for cash sorting and processing may be somewhat different from an interruption enabling the carrier’s employees to eat or rest. Yet, it was part of, or “incidental to,” the understood, contracted-for process by which the armored car carrier would do its job, namely, taking the cash from the site of pickup and delivering it for use at plaintiffs’ business locations. Because the contemplated delivery process necessarily included the sorting and processing of the money, we consider the entire process to be included in the “transit” of the cash.
Along the same lines, we reject the insurer’s suggestion that we treat the transfer of the cash from the armored vehicle into MVMC’s vault as constituting the delivery of the cash from MVMC (acting as a transportation company) to MVMC (acting as the representative of CashZone). Rather, we view MVMC as serving as the transportation company throughout, making one necessary stop as part of the contemplated delivery process for the property being transported.
Finally, to the extent the insurer protests that the bond did not cover theft by the transportation company, but only *154 theft from the transportation company, no such distinction is justified by the language of the bond.
Accordingly, the orders of the Supreme Court, New York County (Jeffrey K. Oing, J.), entered March 21, 2013 and March 25, 2013, which, to the extent appealed from, denied plaintiffs’ motion for summary judgment declaring that defendant Vigilant Insurance Company is obligated to provide coverage pursuant to the “In Transit” provision of the insurance bond, and granted Vigilant’s motion for summary judgment dismissing the complaint as against it, should be reversed, on the law, with costs, Vigilant’s motion denied, and plaintiffs’ motion granted, and it is declared that Vigilant is obligated to provide coverage to plaintiffs pursuant to the bond.
Mazzarelli, J.E, Acosta, Saxe, Richter and Feinman, JJ., concur.
Orders, Supreme Court, New York County, entered March 21, 2013 and March 25, 2013, reversed, on the law, with costs, defendant Vigilant’s motion denied, and plaintiffs’ motion granted, and it is declared that Vigilant is obligated to provide coverage to plaintiffs pursuant to the bond.