## DAVIS, Agent, v. FIRST NAT. BANK OF LONGVIEW et al. (No. 2605.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 7, 1922. Rehearing Denied Dec. 14, 1922.)

**1. Carriers ☞57, 83 — Delivery of goods to person not holding order bill of lading is wrongful as to holder.**

The delivery of goods shipped on order bills of lading within the meaning of U. S. Comp. St. §§ 8604aaa, 8604b, to a person who was not a holder of the bills of lading was wrongful without reference to an order for such delivery by the consignee, and entitled a purchaser of the bills of lading for value and in good faith to judgment against the carrier, under U. S. Comp. St. §§ 8604ee, 8604f, 8604p, if the claim was presented in time.

**2. Carriers ☞125½—Order of Director General governing claims held limited to claims between carriers.**

Order No. 41, of the Director General, made August 28, 1918, regulating disposition of interroad freight claims for loss or damages, was for guidance in settlement of such claims between carriers under the Director General's control, and was not intended to prescribe the manner in which owners of claims should present the same to him.

**3. Carriers ☞159(2)—Requirement of notice of claim within 183 days is valid.**

The requirement of a bill of lading that claims for loss or damage to goods during transportation shall be presented to the carrier within 183 days is valid.

**4. Carriers ☞159(1)—Goods delivered to one not holder of order bill of lading are not lost "in transit" within statute as to notice of claim for damages.**

In U. S. Comp. St. § 8604a, prohibiting a common carrier from requiring notice of claim if the goods were damaged in transit by carelessness or negligence, the expression "in transit" means literally in the course of passing from point to point, and does not include loss of such goods to the holder of an order bill of lading by delivery thereof to another.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, In Transit.]

**5. Carriers ☞159(1)—Goods delivered without order bill of lading unloaded by consignee are not lost to holder while being unloaded within statute as to notice of claim for damages; "lost while being unloaded."**

Goods delivered to the person designated by the consignee, who was not the holder of the order bill of lading, and unloaded by the person to whom they were delivered, not by the carrier, were not lost to the holder of the bill of lading while being unloaded, within U. S. Comp. St. § 8604a, prohibiting the requirement of a notice of claim for such loss, which refers evidently to loss of or injury to the goods by the carrier in the process of unloading them.

**6. Carriers ☞159(1)—Holder of bill of lading cannot recover for conversion without giving required notice.**

The holder of an order bill of lading cannot recover from the carrier for their wrongful delivery to another without giving the notice required by the bill of lading, on the theory that by such delivery the carrier had abandoned the contract and converted the goods.

**7. Carriers ☞159(2)—Requirement of notice of claim limits time from delivery to third person, and not from knowledge of loss.**

The provision of a bill of lading requiring notice of claim to be given to the carrier within 183 days after it has accrued requires such notice to be given by the holder of the bill of lading within the time specified after the delivery of the goods to another, and does not entitle the holder to that period of time after it obtains knowledge of the wrongful delivery.

**8. Carriers ☞76—Liability on draft to holder of bill of lading does not authorize recovery from carrier for wrongful delivery without surrender of bill.**

Where the original consignee of goods shipped under an order bill of lading had drawn a draft on a subsequent consignee which he cashed with the bank to which he indorsed the bill of lading, his liability to the bank on the draft after it was dishonored by the drawee does not entitle him to recover from the carrier for delivering the goods to the second consignee without requiring surrender of the bill of lading, and the carrier incurred no liability to him in making the delivery, under U. S. Comp. St. § 8604r.

Appeal from District Court, Gregg County; P. O. Beard, Judge.

Action by the First National Bank of Longview against James C. Davis, as Agent, and H. H. Watson. Judgment for the plaintiff against both defendants and for the defendant Watson against the defendant Davis for any amount he might be required to pay on the judgment, and defendant Davis appeals. Judgment reversed in so far as it is in favor of plaintiff or defendant Watson against defendant Davis, and judgment rendered that neither of them take anything by their suit against defendant Davis.

Thompson, Barwise, Wharton & Hiner and F. B. Walker, all of Fort Worth, for appellant.

Lacy & Bramlette of Longview, for appellees.

WILLSON, C. J. During November, 1919, one Bert Wilkerson delivered four carloads of cotton seed to the Director General of Railroads, operating the Fort Worth & Denver City Railway. According to the bills of lading covering the shipments the seed were to be carried from Childress, Tex., to Shreveport, La., where they were to be delivered to the order of appellee H. H. Watson. The bills of lading with drafts on Watson for the amount he was to pay for the seed attached were sent to the appellee bank. At Watson's request the bank paid the drafts November 29, 1919, and thereupon Watson indorsed the bills of lading and delivered them to the bank with drafts he drew in favor of the bank on the Henderson Cotton Oil Company for amounts aggregating $9,330.87, the value of the shipments. The seed were carried to Shreveport, where the carrier on November 23, 1919, delivered three of the cars, and on December 25, 1919, delivered the other one to said cotton oil company, without demanding and taking up the bills of lading covering the shipments. Its excuse for doing so was its claim that Watson had ordered it to deliver the seed to the cotton oil company. The cotton oil company having failed to pay the drafts drawn on it by Watson as stated above, the bank brought this suit against appellant and Watson. The recovery sought against appellant was for the value of the seed, on the theory that the carrier was guilty of a conversion of them when it delivered them to the cotton oil company as stated. The claimed liability of Watson was predicated on the fact that he was the transferrer of the bills of lading and drawer of the dishonored drafts. Watson in his answer admitted he was liable to the bank, and sought a recovery over against appellant for the amount the bank might recover against him. The trial was to a jury, and resulted in a judgment in favor of the bank against both appellant and Watson for $9,330.87, the value of the seed, and in favor of Watson over against appellant for the amount he might pay of the recovery awarded the bank against him.

[1] It appears from the facts stated that the bills of lading were order bills within the meaning of the federal statute (articles 8604aaa and 8604b, U. S. Compiled Statutes Annotated), and that the bank held same as a purchaser thereof for value and in good faith. Therefore, as to the bank, the delivery of the seed to the cotton oil company was wrongful without reference to whether Watson ordered the carrier to so deliver them or not, and it was entitled to the judgment awarded it against appellant (articles 8604ee, 8604p, and 8604f of said statutes) unless the contention presented by appellant's first assignment of error that the trial court erred when he refused to instruct the jury to find in his (appellant's) favor against the bank should be sustained.

The contention is predicated: (1) On testimony showing that the bank, in making claim on the carrier for the damages sued for, did not comply with certain requirements in an order (No. 41) of the Director General of Railroads made August 28, 1918; and (2) on testimony showing that the bank did not give the carrier notice in writing of its said claim within the 183 days specified in a stipulation in the bills of lading covering the shipments, hereinafter set out.

[2] The order of the Director General referred to purported to contain only "regulations governing disposition of interroad freight claims for loss and damage," and, we think, was for guidance only in settlements of such claims between carriers under his control and was not intended to prescribe the manner in which owners of claims should present same to him. So far, therefore, as the contention is based on requirements in said order we think it is without merit.

The stipulation in the bills of lading forming the basis of the other ground of the contention was as follows:

"It is mutually agreed that, as a condition precedent to the right to recover for any damages or claim or injury to a partial or total loss of or the depreciation or decline of the market value of the shipment during the transportation thereof, or prior to or after the termination of such transportation, party claiming such right of recovery shall give notice in writing of such claim, stating the nature and character thereof, to some officer of the carrier, or to the nearest or the most convenient local agent of the carrier, or, if delivered at a point beyond the carrier's line of road, the nearest or most convenient station agent of the carrier making such delivery. Such notice cannot and shall not be waived, except in writing by the general freight agent or auditor of the carrier; nor shall any such claim for damages be recoverable unless such written claim therefor shall be presented to the carrier within 183 days after the same may have accrued. The filing of suit shall not be a compliance with this requirement of notice."

It will be noted that by the terms of the stipulation a condition precedent to the right of the bank to recover damages on account of the shipment was that written claim therefor should be presented to the carrier within 183 days after same accrued. At the trial the parties agreed that three of the four cars of cotton seed were delivered by the carrier to the Henderson Cotton Oil Company at Shreveport November 23, 1919, and that the other car was delivered by the carrier to said oil company December 25, 1919. It appeared without dispute in the testimony that a claim in writing for the damages sued for was not

presented by the bank to the carrier until July 2, 1920—about 212 days after three of the cars were delivered, and about 190 days after the other car was delivered to said oil company. Appellant's insistence is that it therefore appeared as a matter of law that the stipulation in the bills of lading referred to was not complied with, and hence that the bank was not entitled to maintain its suit against him.

The bank, on the other hand, insists that the stipulation was not a valid one, and further, if it was that it complied with the condition it imposed, when properly construed.

[3] The condition was a valid one (Railway Co. v. Blish Milling Co., 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948), unless it was inhibited, as the bank insists it was, by the act of February 4, 1887, as amended by subsequent acts of Congress (article 8604a, U. S. Compiled Statutes Annotated). That act amended declared it to be unlawful for a common carrier of interstate shipments "to provide by rule, contract, regulation, or otherwise a shorter period for, giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years," and then provided that "if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

[4] The theory of the bank is that its claim was for the value of cotten seed lost (because of negligence of the carrier) in transit or while being unloaded, within the meaning of the part of the act just quoted, and that the stipulation in the bills of lading was invalid because in contravention of the act. The argument is, in effect, that the seed were "in transit" within the meaning of the statute until they were delivered to the bank, the owner and holder of the bills of lading, and that, as they were never delivered to it, they never ceased to be in transit. Of course, it would follow, in that view, that the seed were "lost" to the bank while in transit; and it would also follow, if they were, and the loss was due to negligence of the carrier, that the inhibition in the statute applied to the stipulation, and that the bank's right to recover of appellant therefor was not affected by its failure, if it did fail, to comply with the requirement that it give the carrier notice of its claim within the time specified in the stipulation. But we think the theory is an erroneous one. Razor Co. v. Davis (C. C. A.) 278 Fed. 864. It may be conceded that the loss of the seed was due to negligence of the carrier, but they were not "in transit" when lost. They ceased to be "in transit" within the meaning of the statute when the cars containing them, having reached the point to which they were destined, were de-livered by the carrier to the oil company. Amory Mnfg. Co. v. Railway Co., 89 Tex. 419, 37 S. W. 856, 59 Am. St. Rep. 65. In the case cited Judge Gaines notes a difference in the meaning of the words "in transit" and "in transitu," which the bank in its brief seems to have overlooked, and says:

" 'In transit' means, literally, in course of passing from point to point, and such is its common acceptation."

We think the words were used in that sense in the statute (Razor Co. v. Davis [C. C. A.] 278 Fed. 864; Hailey v. Ry. Co. [D. C.] 253 Fed. 569), and do not mean that goods transported to their destination and there delivered are still "in transit" if the delivery was wrongful.

[5] The theory, so far as it is predicated on the claim of the bank that the seed were lost while being "unloaded" within the meaning of the statute, is even less plausible, we think. The "damage, loss or injury" "while being unloaded" to which the statute refers evidently means loss of or injury to the goods by the carrier in the process of unloading them. Not only was it not shown that the seed were so lost or injured, but it appeared that they were in fact unloaded by the oil company, and not by the carrier.

[6] The further insistence of the bank, to wit, that appellant should not be heard to defend against the recovery it sought against him on the ground that it had failed to comply with the stipulation in the bills of lading is predicated on the fact that its suit against him was for a conversion of the seed. The argument is that the carrier abandoned the contract when it wrongfully delivered the seed to the oil company, and for that reason thereafter had no right to invoke its terms against the bank. As we understand it, the federal Supreme Court determined to the contrary of the contention in Railway Co. v. Blish, 241 U. S. 190, 36 Sup. Ct. 541, 60 L. Ed. 948.

[7] It follows from what has been said that we think the refused instruction should have been given to the jury unless there was testimony that authorized a finding that the bank gave the carrier notice of its claim as required by the stipulation. The bank does not contend that it presented a written claim to the carrier for the damages it sued for within 183 days from the time the cotton seed were wrongfully delivered to the cotton oil company. Its contention is that the stipulation properly construed only bound it to give such notice within 183 days from the time it knew or in the exercise of diligence should have known that the carrier had delivered the seed to the oil company, and that it complied with the stipulation so construed. Not only is there nothing in the language used in the bills of lading which would warrant us in so construing them, but, as will be seen by looking to the stipulation in question, the

language there used forbids such a construction. That being true, we know of no principle of law which can be referred to as a support for appellee's contention.

[8] We think the judgment is also erroneous so far as it is in favor of Watson against appellant. For anything to the contrary appearing in the record, he parted with his entire interest in the seed when he transferred the bill of lading to the bank, and it alone had a right to complain of the conduct of appellant in delivering same to the oil company as it did. He (Watson) incurred no liability to the bank by his transfer because of the wrongful act of appellant in so delivering the seed. Article 8604r, U. S. Compiled Stat. Ann.; 10 C. J. 202; Maybee v. Tregent, 47 Mich. 495, 11 N. W. 287. His liability to the bank was not as transferrer of the bills of lading, but as drawer of the drafts on the oil company. Had he paid the drafts when the oil company refused to accept and pay them, or had the bank reassigned the bills of lading to him, he might have been entitled to maintain a suit against appellant for the conversion the carrier was guilty of. As he neither paid the drafts nor took such an assignment of the bills of lading he had no interest in the seed which appellant was bound to take notice of. Therefore the fact shown by testimony that Watson within 183 days after the conversion occurred complained thereof and demanded that the carrier pay him the value of the seed was of no importance in the case.

The judgment, so far as it is in favor of the bank against Watson, is not complained of, and it will not be disturbed in that respect. But, so far as it is in favor of the bank and Watson against appellant, it will be reversed, and judgment will be here rendered that neither of them take anything by their suit against appellant.