Edward J. Greenfield, J.
During the years 1962 and 1963 plaintiff, a manufacturer and seller of men’s neckties who regularly gave his goods out for processing by contractors, had a policy of insurance with the defendant denominated by it a “Garment Contractor’s Floater ”. The policy covered the property of the insured ‘ ‘ while in due course of transit between the premises of the Insured and the premises of his contractors * * * and while on the premises of contractors * s * for the purpose of performing work on the property for the account of the Insured.” The perils insured against were all risks of direct physical loss or damage “ while in transit ”, and certain enumerated risks, including burglary and theft ‘ ‘ while on the premises of contractors ’ ’. The policy also covered property in the custody of messengers of the insured or his contractors.
On March 22, 1963 one of plaintiff’s contractors, the Central Neckwear Co. of Newark, N. J., which had been converting plaintiff’s merchandise into finished ties, loaded over 100 dozen ties in cartons onto its station wagon and headed for plaintiff’s premises in Manhattan to make the delivery. It was late Friday afternoon, and when the station wagon arrived at plaintiff’s premises, plaintiff had already closed for the day. Accordingly, Central Neckwear’s president, who was making the delivery personally, drove to his home in Brooklyn and garaged the station wagon there in space regularly rented by Central, with the intention of completing the delivery in Manhattan the first thing Monday morning, before he returned to Newark.
The station wagon was locked, with the cartons of finished neckties inside. At 6:15 Monday morning, when Central’s president went down to the station wagon, he found the left window vent broken and the door pried open. The cartons were missing. The theft was reported to the police, and thereafter plaintiff made claim for the loss under its insurance policy.
The defendant insurance company resists payment, contending that at the time of the theft the property was neither on the premises of the contractor nor actually in transit.
The general rule with respect to insurance policies covering goods “in transit” is succinctly stated in New York Jurisprudence (vol. 30, Insurance, § 1160); “ Once the transporta *803 tion of the goods has started, the property remains protected under the policy during the ordinary delays in transshipments incident to such movements. ” This begs the question somewhat, however, since what is meant by “ transportation ” is the nub of the problem. When does transit begin, and when does it end under a countless variety of factual patterns?
According to Webster’s New International Dictionary (2d ed., p. 2691) “ Goods shipped from one person to another are said to be in transit m * * from the time when delivered
to the carrier by the consignor to that when actually or constructively delivered to the consignee.” Such a definition has been taken as too broad by the courts of this State. They define “transit” in terms of movement rather than the custody of goods by a carrier. Thus, in Mayflower Dairy Prods. v. Fidelity-Phenix Fire Ins. Co. (170 Misc. 2, 3 [App. Term, 1st Dept., 1938]) where goods had been loaded on a truck, and delivery was to commence the next morning, the court held the goods were “in storage” and not “in transit”, stating that the latter term “means the movement of the loaded conveyance carrying the goods from the starting point or seller’s premises to the point of destination or place of delivery to the buyer or customer. While there may be some reasonable deviation, such as temporary stops, incidental to the process of delivery or necessary for those engaged in same, or even the return of undelivered goods, transportation or in transit implies the continuous action of moving the goods from one point and putting them down in another.” (To the same effect, see San-Nap-Pak Mfg. Co. v. Firemen’s Ins. Co., 47 N. Y. S. 2d 542, affd. 268 App. Div. 905.)
There is a sharp distinction, however, between goods which have never actually moved, and those which have started on their journey, but where actual movement has temporarily ceased. Clearly a truck halted for a traffic light is still 1 ‘ in transit ’ ’, and so are temporary layovers of greater duration to permit the driver to eat, rest, or use the facilities of a comfort station. ‘ ‘ To hold that transit means actual movement, and not a period of rest, is too narrow a construction to give to this undertaking, and is contrary to its full meaning and scope.” (Underwood v. Globe Ind. Co., 245 N. Y. 111, 115.)
When the layover is of longer duration, however, the defendant argues that the transit is broken. It cites Druss Stores v. Travelers Ind. Co. (23 Misc 2d 913 [App. Term, 1st Dept., 1960]) and Jacobs v. Safeguard Ins. Co. (N. Y. L. J., Aug. 22, 1963, p. 8, col. 7 [Civ. Ct., Kings County]) in support of its contention that on a short-haul at least, overnight stops are not *804 covered. Those cases must be limited to their special facts. In the Druss case the policy covered the goods insured only while ‘ ‘ continuously, in due course of transportation ’ ’, a requirement of continuity not here present, and the driver had by-passed the destination and parked the vehicle in the street, unattended, for his own convenience over the week end. In the Jacobs case the car was parked overnight near the driver’s home when destroyed by fire, and again this was held a deviation so that the goods were no longer in transit. And in Federman Co. v. American Ins. Co. (267 N. Y. 380) the goods had arrived at their destination, were accepted on plaintiff’s behalf, and were then left in the garage where the loss took place, so that the transportation was held to have been terminated.
The true test thus appears to be not whether movement was interrupted overnight, or over a week end, but whether the goods, even though temporarily at rest, were still on their way, with any stoppage merely incidental to the main purpose of delivery. Here the goods had arrived at the point of destination, but there being no one there to receive the goods, the storage of the station wagon in the contractor’s parking space in Brooklyn was consistent with the continuing transit, and was not a deviation or by-pass for the contractor’s own convenience. (Cf. Gulf Ins. Co. v. Ball, 324 S. W. 2d 605 [Texas Civ. App., 1959]) where the goods were destroyed by fire after the truck went into a ditch, and was left on the road, while the driver returned to his starting point to get help. If darkness had overtaken the driver on the road, and he stopped at a motel for a night’s sleep before continuing on his journey, it could not be said that transit had ceased. (J. G. Ries & Sons v. Automobile Ins. Co., 121 N. J. L. 493.) Why should the result be different because the driver continued to his destination despite the late hour, and found it too late to make delivery?
In the final analysis, the outcome of a case such as this should be determined not by precise semantic shadings of terms of art, but by a common-sense appraisal of the over-all situation. What was the protection the plaintiff manufacturer was buying? He could cover the goods adequately when they were on his own premises. He needed a floater to cover the risks of loss when the goods were off his premises. It would be reasonable for him to assume that at such times the goods would be either on his contractor’s premises or in transit. So he got not a straight Inland Marine policy covering transportation only, but a Grarment Contractor’s Floater covering goods off his premises. In selling such policies, the insurance companies most assuredly do not warn their prospective assureds that if the goods are *805 off their premises, and on a track the wheels of which are not rolling, and the parking brakes set, there is no coverage. Such a hiatus is not to be read into the policy. Companies adept at drafting paragraphs of exclusions from coverage should not look to the courts to engraft further exclusions not contemplated by the premium payer onto the policies they buy for “ protection ”.
Having found that the loss here took place while the goods, though at rest, were * ‘ in transit ’ ’, it is not necessary to discuss whether, while in Central’s Brooklyn parking space, they were on the contractor’s premises or in the contractor’s custody. The value of the goods having been proven to be $2,042.67, plaintiff is entitled to judgment in that amount, together with interest from March 25, 1963.