**Bob SIMONS, d/b/a Bob Simons Grain Company, Appellant,**

v.

**NIAGARA FIRE INSURANCE COMPANY, Appellee.**

No. 16690.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 21, 1966.

Rehearing Denied Feb. 18, 1966.

Herrick & Tillman, and John W. Herrick, Fort Worth, for appellant.

Sanders & Nolen, and Fleming A. Waters, Dallas, for appellee.

LANGDON, Justice.

This case grows out of a claim on an insurance policy which provided coverage against losses of or damage to property of the appellant while in transit. On March 8, 1962, the appellant purchased from the Commodity Credit Corporation a quantity of grain which was stored at the Spacek Grain Company Elevator at Ralls, Texas, and the Lorenzo Grain Co-op Elevators at Lorenzo, Texas. On approximately March 20, 1962, the appellant was informed that he no longer owned any grain at either elevator. An investigation revealed that on March 13, 1962, two loads of appellant's grain were loaded at the Lorenzo Grain Co-op and on March 15, 1962, and March 17, 1962, two more loads were loaded at the Spacek Grain Elevators. The grain was loaded on the trucks of the Wichita Trucking Co. and receipts were given by its drivers Messrs. Crane and Alvaredo. Appellant had given no one the authority to take his grain from

the elevator. Subsequent to being removed from the elevator the whereabouts of the grain has remained unknown to the appellant. The case was tried before the court without a jury. The court in effect found that the losses sustained were not "in transit" as that term was contemplated by the parties to the insurance contract and therefore the losses sustained whether by theft or otherwise were not insured losses within the coverage provided by the insurance policy.

▬ We are of the opinion that the court properly construed the contract to cover losses only while the goods were in transit and the court properly found that these goods were not in transit when the losses occurred. The contract in question is plain and unambiguous. The grain was in storage in the elevators at Ralls and Lorenzo when it was purchased by the appellant. The appellant did not at any time authorize the removal of the grain from the elevators or arrange for its loading and delivery elsewhere. The grain was in storage when unauthorized persons took it.

"An inland transit policy, insuring the plaintiff on merchandise while loaded for shipment on, and in transit in or on, described motor trucks, was held in Mayflower Dairy Products, Inc. v. Fidelity Phenix Fire Ins. Co. (1938) 170 Misc. 2, 9 N.Y.S. 2d 892, not to cover the theft of merchandise from two trucks kept loaded on the premises overnight, one of which was removed from the premises by the thief, and the other pilfered on the premises. It appeared that the plaintiff's usual practice was to keep motor trucks loaded at all times, and that after the day's deliveries, merchandise was replaced in the trucks on their return at the end of the day. The court said that transportation or in transit as applied to a seller making its own deliveries to customers means the movement of the loaded conveyance carrying the goods from the starting point or seller's premises to the point of destination or place of delivery to the buyer or customer, and that while there may be some reasonable deviation such as temporary stops incidental to the process of delivery, or even the return of undelivered goods, the terms transportation or in transit imply the continuous action of moving the goods from the one point and putting them down in another. The court concluded that the situation whereby the seller, for his own convenience, loads the goods on its truck on its own premises on the evening of one day, and keeps the loaded truck stored in such premises through the night, until the truck is manned and proceeds on its way the morning of the next day, implies storage. * * *

"However, goods taken from the insured's premises by one posing as a truckman were held in Glenmore Silk Corp. v. Fidelity & Guaranty Fire Corp. (1934) 151 Misc. 734, 271 N.Y.S. 174, not to be 'in transit.' The court said that a reading of the entire contract established clearly that what the parties intended was protection of property while in transit, and that the loss in question differed in no respect from a theft of the identical goods from the premises of the plaintiff by burglars." 80 A.L.R.2d 445–455, § 3, "Anno: Insurance—Coverage—'In Transit'"; see also 37 A.L.R.2d 1103, § 16; see also cases cited in 54 A.L.R. 488, under heading "Meaning of term 'in transit' as used in insurance policy."

▬ The word transit has a significance of activity, of motion and direction. Literally it means in course of passing from point to point and such is its common acceptation. Ordinarily goods in transit would imply that the goods will be lawfully picked up at a given place and hauled to a place designated by the owner or one with the authority to so designate.

This case does not involve a situation in which grain is lawfully picked up by authorized persons who before making delivery decide to steal it or otherwise convert it to their own use.

In the instant case unauthorized persons picked up the grain. Grain stolen from an elevator or a warehouse cannot be said to be "in transit" within the meaning of an in-

 

surance contract while a thief is carrying it away.

We overrule all points of error and affirm the judgment of the trial court.

Affirmed.