**HAGGAR COMPANY, Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Appellee.**

No. 8161.

Court of Civil Appeals of Texas, Texarkana.

May 29, 1973.

Erich F. Klein, Jr., Lyne, Klein & French, Dallas, for appellant.

Larry L. Gollaher, Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellee.

CHADICK, Chief Justice.

In the trial court the parties, Haggar Company as plaintiff, and United States Fire Insurance Company, as defendant, submitted this case upon an agreed statement of facts. The trial judge rendered a take nothing judgment and the Haggar Company has perfected an appeal.

The agreed statement of facts, with some matter of slight pertinence excised, is as follows, to-wit:

"COMES NOW the Plaintiff and Defendant in the above captioned cause, by and through their attorneys of record, pursuant to Rule 263, Texas Rules of Civil Procedure, and file this their Agreed Statement of Facts, which shall constitute the record of the above cause. Said parties hereby stipulate as follows for the purpose of this trial only:

"On or about July 17, 1971, Plaintiff suffered a loss in the amount of $12,097.75 resulting from the theft of its trailer loaded with slacks which was parked alongside Plaintiff's warehouse at 6112 Lemmon Avenue, Dallas, on the rear parking lot owned by Plaintiff. None of the slacks which were stolen have ever been recovered. Said loss was an insured loss under the terms of the insurance policy issued to Plaintiff by

Defendant on October 1, 1970, which in full force and effect on July 17, 1971. * * *

"The property which is insured by said insurance contract is primarily men's clothing, both piece goods and finished products. When this property is being transported, it is placed on shelves inside large boxes equipped with rollers. Each box has its own identifying number painted on it and its own padlock. These boxes are transported between various manufacturing plants and Plaintiff's warehouse in Dallas by tractor-trailers owned by Plaintiff.

"The slacks which were stolen were assembled by Duncan Manufacturing Company, Duncan, Oklahoma. The Plaintiff's tractor-trailer loaded with slacks left Duncan, Oklahoma on Friday, July 16, 1971, driven by William M. Dyson, an employee of Plaintiff. When Mr. Dyson arrived outside Plaintiff's warehouse at 6115 Lemmon Avenue, Dallas, Texas, the doors of the loading dock were closed. Since Plaintiff's Receiving Department closes at 4:30 P.M., trucks often come in too late for the boxes to be moved inside Plaintiff's warehouse; and, although Plaintiff has no written policy concerning such situations, the procedure which was customarily followed at the time of this loss was for the driver to open the doors of the trailer and back it up to the closed door of the loading dock. With regard to such shipments this is as far as the trailer goes. The tractor was then uncoupled and pulled away to a point alongside but inside the fence at the rear parking area. The last person to leave the premises after 4:30 P.M., which in this case was not Mr. Dyson, then locks the gate in the cyclone fence which surrounds the rear parking lot. This fence that is attached to the warehouse and surrounds the rear parking lot, which includes the area where the trailers are backed up against the loading dock, is entirely on the Plaintiff's property. The loading dock is on the inside of the building; so, when the trailer is backed up to one of the doors it is almost touching the back wall. In this position, access to the inside of the trailer can be gained only by moving it or by unlocking and opening the loading dock door from inside the building. This is the procedure which Mr. Dyson followed on the evening of July 16, 1971. When he had done this, he had discharged his personal responsibility with respect to the contents of the trailer, and in fact if the Receiving Department had been open, Mr. Dyson would have done nothing differently since it is the responsibility of the warehousemen to unload the trailer.

"When a trailer is left parked in this position, the contents are rolled off the truck and into Plaintiff's warehouse on the next working day by employees in Plaintiff's warehouse after they unlock and open the loading dock door from inside the warehouse. As the boxes are rolled into Plaintiff's warehouse, Plaintiff's Receiving Clerk, Harvey F. Roberts, is responsible for checking the numbered boxes against the box numbers on the bill of lading, which is carried inside the trailer. However, since the Receiving Department is not open on Saturdays, the boxes in the trailer which Mr. Dyson parked next to the unloading dock on Friday, July 16, 1971, could not be rolled into Plaintiff's warehouse and checked against the bill of lading the next morning. The trailer was stolen either late Saturday evening or early Sunday morning by a party or parties unknown who coupled one of the tractors on the lot to the trailer and drove through the locked gate of the cyclone fence surrounding the Plaintiff's rear parking lot. When the tractor-trailer was subsequently recovered, four of the boxes had been opened and the slacks which were therein, having a value of $12,097.75, were missing and have never been recovered.

"Thus, if the slacks were still in due course of transit within the terms of the insurance policy at the time of the theft, Plaintiff is entitled to recover $12,097.75, less the $5,000.00 deductible. If the slacks were not still in due course of transit at the time of the loss, the $25,000.00 deductible provision is applicable and Plaintiff will not be entitled to recover any part of its $12,097.75 loss."

■ Were the slacks *in due course of transit* at the time of loss? This is the issue submitted by the agreed statement. An agreed case is considered to have the nature of a special verdict, and is a request by the litigants for judgment in accordance with applicable law. Hutcherson v. Sovereign Camp, W.O.W., 112 Tex. 551, 251 S. W. 491 (1923); Merrimack Mutual Fire Ins. Co. v. McCaffree, 486 S.W.2d 616 (Tex.Civ.App. Dallas 1972, writ ref'd, n. r. e.); Perry v. Aetna Life Ins. Co. of Connecticut, 380 S.W.2d 868 (Tex.Civ.App. Tyler 1964, writ ref'd, n. r. e.). The Haggar Company's brief contains three points of error which are grouped for argument. The points in separate ways present the central issue tendered by the agreed statement. No case cited by the parties appears to be precisely in point or to present a situation so analogous as to dispel doubt as to the appropriate answer to the issue between the parties. Disposition of the appeal must rest ultimately upon established general principles of contract law. The intent of the parties to the insurance contract must be ascertained from the language used in stating the agreement. Dillingham v. American Security Life Insurance Company, 384 S.W.2d 920 (Tex.Civ. App. Houston 1964, no writ); Provident Insurance Company v. Bagby, 167 S.W.2d 813 (Tex.Civ.App. Eastland 1941, no writ); Royal Insurance Company v. Texas & G. Ry. Co., 53 Tex.Civ.App. 154, 115 S. W. 117 (Texarkana 1908, error ref'd); 32 Tex.Jur.2d Insurance, Sec. 55.

■ The term *in transit* is constantly used in the Inland Marine Insurance and related fields, such as the Inland Floater Policy in this case. Courts frequently have occasion to ponder the meaning of the phrase. The dictionary meaning of the word *transit* is *the act of passing.* (Century Dictionary and Cyclopedia). While discussing a conventional bill of lading case, Chief Justice Gaines, speaking for the court, explained in Amory Mfg. Co. v. Gulf, C. & S. F. Ry. Co., 89 Tex. 419, 37 S.W. 856 (1896), why the phrase *in transit* had a more restricted meaning than the phrase *in transitu.* In the opinion, *in transit* is defined in such way as to indicate that its general meaning was not restricted to cases similar to that under discussion. Defining the meaning of the phrase, Judge Gaines said: " 'In transit' means literally in course of passing from point to point, and such is its common acceptation." In a different conventional bill of lading case, Mr. Justice Butler, speaking for the court said in Davis v. Roper Lumber Co., 269 U.S. 158, 70 L.Ed. 209, 46 S. Ct. 28, 44 A.L.R. 1357 (1925), that: "In the ordinary and usual meaning of the word, 'transit' ends before delivery at destination." As implied in *Amory*, Justice Butler's definition appears to be intended as a general statement unmodified by the context in which it was made. Using the dictionary definition of *transit,* the question at issue becomes: "Were the slacks in due course of the act of passing at the time of loss?" Less awkwardly, if the *Amory* definition is permissible, the question might be phrased, "Were the slacks in due course or passing from point to point at the time of loss?" This court has reached the conclusion that the slacks were not in transit when the stipulated facts of this case are fully considered.

Though a bill of lading accompanied the goods in shipment, this is a case of private carriage. That is to say, a conventional bill of lading issued by a common carrier, subject to state or federal law or regulation, is not involved. The destination of the shipment is not stated by that particular term in the agreed statement of facts,

but it is clear that the Haggar Company's warehouse in Dallas was the destination of the shipment. When the Haggar Company operated truck reached the warehouse and parked for unloading at the warehouse dock the goods had no further destination. Any shifting or movement of the goods thereafter was a part of the warehousing process. The fact that the unloading grounds and dock were enclosed by cyclone fence and the gate thereto locked by an employee other than the truck driver bolsters a conclusion that the goods had reached their destination and were in custody of the Haggar Company warehouse and thereafter subject to the warehousing procedures. The act of passing from the point of origin to the destination point, as contemplated by the phrase *in transit,* was completed when the driver parked the trailer at the dock ready to be unloaded and uncoupled the tractor from it. See Amory Mfg. Co. v. Gulf, C. & S. F. Ry. Co., supra; Davis v. First National Bank of Longview, 245 S.W. 1009 (Tex.Civ.App. Texarkana 1922, err. ref'd); Royal Insurance Co. v. Texas G. Ry. Co., supra; Simons v. Niagara Fire Ins. Co., 398 S.W.2d 833 (Tex.Civ.App. Fort Worth 1966, no writ); Federman Co. Inc. v. American Ins. Co., 267 N.Y. 380, 196 N.E. 297 (1935).

For authorities cited in support of the Haggar Company's contention that the goods were still in transit when stolen see Ben Pulitzer Creations v. The Phoenix Ins. Co., 47 Misc.2d 801, 263 N.Y.S.2d 373 (1965) affirmed per curiam 52 Misc.2d 934, 276 N.Y.S.2d 1009; Gulf Ins. Co. v. Ball, 324 S.W.2d 605 (Tex.Civ.App. Amarillo 1959, writ ref'd, n. r. e.); Hailey v. Oregon Short Line R. Co., 253 F. 569, 571 (D.C.S.D.Idaho, 1918). For the reasons stated, these cases are not believed to be controlling and will not be followed.

The judgment of the trial court is affirmed.