[Civ. No. 58193. Second Dist., Div. Three. July 22, 1981.]

AETNA CASUALTY AND SURETY COMPANY, Plaintiff and Respondent, v.
BURBANK GENERATORS, INC., Defendant and Appellant.

COUNSEL

Weisman, Grush & Breckler and Julius S. Grush for Defendant and Appellant.

Haight, Dickson, Brown & Bonesteel and Roy G. Weatherup for Plaintiff and Respondent.

OPINION

**COBEY, J.**—Defendant, Burbank Generators, Inc. (Burbank), appeals from a judgment declaring that a cargo loss suffered by it on August 30, 1976, was not covered by a then outstanding specified inland marine insurance policy issued by plaintiff, Aetna Casualty and Surety Company (Aetna), to it. The sole question on appeal is whether the loss was

covered by the policy which, in turn, depends upon whether the loss occurred while the cargo was "in transit" or "in ordinary course of transportation."[1]

We intend to reverse the judgment for reasons that follow.

FACTS[2]

On August 30, 1976, sometime prior to 6 p.m., at Burbank's factory, warehouse and store on Sherman Way in Canoga Park, two trailers and a truck owned by Burbank were loaded, locked and invoiced for delivery of their cargoes to particular customers in northern California. At approximately 6 p.m. three employees of Burbank drove these three conveyances one to two miles from the Sherman Way headquarters of Burbank to an unfenced parking lot on Roscoe Boulevard, also in Canoga Park, and leased by Burbank.[3] There, all three conveyances were parked and, in accordance with a common practice of truck drivers on the road, the two trailers were disconnected and the drivers apparently drove home in the two tractors.[4]

The purpose of leaving these three conveyances at the Roscoe parking lot was to facilitate their pick up by their drivers at 2 o'clock the following morning for the trips north since the parking area at the Sherman Way location was both fenced and locked. In addition, extended parking at the Sherman Way location was discouraged because its space was needed generally for safe docking.

---

[1]Paragraph 4 of transit rider No. 1 of the policy reads in pertinent part: "This policy covers: 4. Loss of or damage to lawful goods and merchandise in shipment ... occurring while in transit...."

Paragraph 5 of the same document reads in relevant part: "[T]his policy covers said property from the time of leaving the warehouse, store or factory of shipper and thereafter continuously, in ordinary course of transportation until same is delivered to warehouse, store, or factory at destination...."

[2]This case was tried to the court alone on a stipulated set of facts. This statement of facts is taken primarily from the findings of fact of the trial court and secondarily from the stipulated set of facts.

[3]The Roscoe Boulevard property consisted of a building for the storage of cores and a vacant lot used for parking. The trial court's finding, that both of the Canoga Park locations of Burbank together constituted its warehouse, store and factory, seems misleading.

[4]The record is unclear as to whether all three drivers left the Roscoe facility in one tractor, or whether the truck driver went home separately by some other means. The stipulated facts and the findings of fact differ on this point.

On the evening of August 30, 1976, between the hours of 6 and 11 p.m., the aforementioned two trailers and the truck were broken into by an unknown person or persons and, among other things, the cargoes of these conveyances were stolen.

## DISCUSSION

We believe that this cargo loss of Burbank was covered by Aetna's aforementioned transit rider to its inland marine insurance policy. The fundamental reason for this belief is our view that the three trips of these three conveyances to northern California *began* at Burbank's Sherman Way headquarters when they were loaded, locked and their cargoes invoiced there, and the subsequent cargo loss at Burbank's Roscoe Boulevard parking lot therefore occurred while these cargoes were in transit and in the ordinary course of transportation. The temporary stop at Burbank's Roscoe Boulevard parking lot was intended to be for a maximum of eight hours and was for the purpose of facilitating the pick up of this equipment by the drivers thereof at 2 a.m. The stop was not made so that any further work might be done by Burbank on the cargoes and it certainly was not, as the trial court found, for the purpose of storage. Furthermore the trial court's finding that "the 'point of origin' of the shipment in question was the Roscoe facility" is plainly factually erroneous and therefore must be disregarded.

As stated in the annotation entitled Insurance—Coverage—"In Transit" (1961) 80 A.L.R.2d 445, 450, "[t]he cases consistently recognize that a merely temporary interruption of actual transportation for purposes related to the carriage itself does not remove the property from transportation . . . ." (See also 11 Couch on Insurance (2d ed. 1963) § 42:155, p. 21.) Or, as stated in four subsequent cases, the true test is whether the insured goods, even though temporarily at rest, were still on their way and whether the stop, where the loss occurred, was merely incidental to the main purpose of delivery. (See *Home Insurance Co.* v. *F. & F. Clothing Co.* (1968) 250 Md. 534 [243 A.2d 572, 575]; *Pa. Nat. Mut. Cas. Ins. Co.* v. *Murphy* (Tex.Civ.App. 1979) 579 S.W.2d 58, 60-61; *Franklin* v. *Washington General Insurance Corp.* (1970) 62 Misc.2d 965 [310 N.Y.S.2d 648, 650], affd. (1971) 36 App.Div.2d 608 [319 N.Y.S.2d 383]; *Ben Pulitzer Creations, Inc.* v. *Phoenix Ins. Co.* (1965) 14 Misc.2d 801 [263 N.Y.S.2d 373, 376], affd. (1966) 52 Misc.2d 934 [276 N.Y.S.2d 1009].) In each of these four cases the insured goods, while en route to their respective destinations, were stolen from a locked vehicle parked overnight at or near the home or motel

room of the insured or an employee of the insured in order to facilitate the subsequent delivery of such goods. (*Home Insurance Co. v. F. & F. Clothing Co., supra*, 243 A.2d at p. 573; *Pa. Nat. Mut. Cas. Ins. Co. v. Murphy, supra*, 579 S.W.2d at p. 60; *Franklin* v. *Washington General Insurance Corp., supra*, 310 N.Y.S.2d at p. 649; *Ben Pulitzer Creations, Inc.* v. *Phoenix Ins. Co., supra*, 263 N.Y.S.2d at p. 374.)

The fact that here such a temporary stop in the delivery of the insured cargoes to northern California and the loss at issue occurred on premises of the insured, Burbank, different from those at which the trips involved had earlier originated, is without legal consequence. Under the already-quoted language of the transit rider to the policy involved, any loss "in transit" or "in ordinary course of transportation" is covered *regardless of where it occurs.* It is true that the second of the already-quoted paragraphs includes the word "continuously" as a modifier of the phrase "in ordinary course of the transportation," but it is clear that a temporary stop of brief duration related to the transportation itself does not break the requisite continuity of the transportation. (See *Ore & Chemical Corp.* v. *Eagle Star Insurance Co., Ltd.* (2d Cir. 1973) 489 F.2d 455, 456-458 (where loss of gold by armed robbery of the insured in a motel in Wyoming was held covered by a policy using the word "continuously" when the gold had been brought there from Kansas by the insured for inspection and delivery to a prospective purchaser who perpetrated the robbery).

### DISPOSITION

The judgment is reversed for further proceedings consistent with the views expressed in this opinion.

Klein, P. J., and Potter, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 16, 1981.