IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 19, 2006 Session

# CARGO MASTER, INC.
v.
# ACE USA INSURANCE COMPANY, STEVEN W. HINES, D/B/A S & A TRUCKING, AND S & A TRANSPORTATION, INC. D/B/A S & A TRUCKING

**An Appeal from the Chancery Court for Shelby County**
**No. CH-02-2081-2     Arnold B. Goldin, Chancellor**

---

**No. W2005-02798-COA-R3-CV - Filed January 19, 2007**

---

This is an insurance case. The plaintiff cargo company entered into a carrier agreement with an independent trucking company to transport freight, in which the trucking company agreed to indemnify the plaintiff for any loss or damage to the freight transported. The trucking company obtained a motor truck cargo liability insurance policy, which insured property while in due course of transit. In the process of transporting a shipment of tires for the plaintiff, the driver for the trucking company parked the trailer portion of the tractor-trailer behind a shopping center and left it overnight. During the night, the cargo was stolen. The trucking company submitted a claim against its cargo insurance policy and the claim was denied. The plaintiff sued the trucking company and the cargo insurance company for breach of contract, seeking to recover the value of the stolen cargo. The plaintiff filed a motion for summary judgment against the defendant cargo insurance company and, in response, the defendant insurance company filed a cross-motion for summary judgment. The trial court granted summary judgment in favor of the cargo insurance company, finding that the shipment of tires was not "in transit" when it was stolen and that, consequently, there was no coverage under the policy. The plaintiff cargo company appeals. We reverse in part, affirm in part, and remand the case for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed in part, Affirmed in part, and the case is Remanded for Further Proceedings.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Christopher L. Nearn, Germantown, Tennessee, for Plaintiff/Appellant Cargo Master, Inc.

John D. Richardson, Memphis, Tennessee, and Wayne D. Taylor and Ruth M. Pawlak, Atlanta, Georgia, for Defendant/Appellee Ace USA Insurance Company.

**OPINION**

On March 8, 2000, Plaintiff/Appellant Cargo Master, Inc. ("Cargo Master"), entered into a contract carrier agreement as a broker with Defendant S & A Trucking,[1] an independent trucking company, for the transportation of freight. The agreement provided that S & A Trucking would be liable for the loss, damage, or delay of any shipment while in its possession and control. S & A Trucking also agreed to indemnify Cargo Master from liability for loss or damage to any freight transported. Thereafter, S & A Trucking obtained a motor truck cargo insurance policy from Defendant/Appellee ACE USA Insurance Company ("ACE") and executed a premium finance agreement with Transamerica Insurance Finance Corporation ("Transamerica") to finance the monthly premium payments. The cargo insurance policy ACE issued to S & A Trucking states, in pertinent part:

> We will pay for loss to Covered Property from any one of the Covered Causes of Loss.
>
> **1. COVERED PROPERTY**
> Covered property means lawful goods and merchandise of others that you have accepted for transportation under a bill of lading, tariff, shipping receipt or contract of carriage as a common or contract motor carrier or when you trip lease to another motor carrier. Such property is covered while in due course of transit while either in your care, custody or control or in the custody of a connecting carrier.

Subsequent to entering into all of these agreements, S & A Trucking assigned a driver to transport a shipment of tires for Cargo Master. The tires belonged to Continental Tire, Inc. On November 26, 2001, the driver parked the trailer containing the shipment of tires behind the Southgate Shopping Center in Memphis, Tennessee. According to Cargo Master, the tractor portion of the tractor-trailer had experienced some "mechanical difficulties" and needed to be repaired. When the driver returned the next day, on November 27, 2001, the trailer and the shipment of tires were gone; apparently the goods were stolen overnight.

S & A Trucking submitted an insurance claim to ACE, seeking to recover the value of the stolen tires. ACE denied the claim, on the basis that, prior to the date of the theft, the cargo insurance policy had expired for nonpayment of premium. Specifically, ACE asserted that S & A Trucking's premium finance agreement with Transamerica was in default, which resulted in the cancellation of the cargo insurance policy, effective October 24, 2001. As a result, Cargo Master paid Continental Tire, Inc. $35,700.61 for the stolen tires.

---

[1] For ease of reference, we will refer to Defendants Steven W. Hines, d/b/a S & A Trucking, and S & A Transportation, Inc., d/b/a S & A Trucking, collectively as "S & A Trucking" throughout this opinion.

On October 30, 2002, Cargo Master filed a lawsuit against ACE and S & A Trucking[2] for breach of contract. In the complaint, Cargo Master alleged that ACE's cancellation of the cargo insurance policy was not effective and that, as a certificate holder, ACE was liable to Cargo Master for $35,700.61, the value of the stolen tires. Cargo Master also sought "bad faith penalties" for ACE's refusal to pay the claim under Tennessee Code Annotated § 56-7-105, as well as treble damages under the Tennessee Consumer Protection Act, see Tennessee Code Annotated § 47-18-109(a)(3).

On January 13, 2003, ACE filed its answer, denying Cargo Master's allegations and setting forth eighteen defenses. Among these defenses, ACE asserted that the cargo insurance policy issued to S & A Trucking was cancelled and not in effect at the time of the loss. ACE also claimed that there was no coverage under the policy for the loss because the trailer was parked and thus not "in the course of transit" within the meaning of the policy. Discovery ensued.

Following discovery, Cargo Master filed a motion for summary judgment and ACE responded with a cross-motion for summary judgment. The motions addressed (1) whether the cargo insurance policy was in effect at the time of the loss and (2) whether the shipment of tires was "in transit" within the meaning of the cargo insurance policy. The trial court held a hearing on the motions on October 26, 2005. At the conclusion of the hearing, the trial court ruled from the bench as follows:

> [I]n this case we have a situation where the trailer was simply left in a public parking lot and the tractor left the trailer.
> . . . [T]he definition of in transit . . . means in [the] course of passing from point to point and ordinarily goods in transit would imply that goods would lawfully be picked up at [a] given place and hauled to [a] place designated by the owner or one with authority to so designate.
> That would certainly indicate that the expectation is not that a load of cargo in a trailer is going to be left in a public parking lot. I believe . . . the expectation is almost like a bailment, that you are going to put [the goods] in a secured situation if you are going to leave it or it has to be in transit. In other words, between point A and point B without there being a stop off where you simply leave [the goods] and go about doing other business, which is apparently what occurred in this case, even though it may have been the business of the truck.
> . . . [O]n that basis without getting into the insurance contract I am going to grant the summary judgment [of ACE].

Thus, the trial court found that the shipment of tires was not "in transit" and that, consequently, there was no coverage under the cargo insurance policy issued to S & A Trucking. The trial court did not make a ruling on whether the insurance policy was in effect at the time of the loss.

---

[2] The litigation between Cargo Master and S & A Trucking remains pending and is not at issue on this appeal.

On November 3, 2005, the trial court entered an order granting ACE's cross-motion for summary judgment and denying Cargo Master's motion for summary judgment, in accordance with its oral ruling. In addition, the trial court directed entry of final judgment in favor of ACE pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. From this order, Cargo Master now appeals.

On appeal, Cargo Master's sole issue for review is whether the trial court erred in granting summary judgment to ACE on the basis that the cargo was not "in transit" at the time of the loss.[3]

Our review of a summary judgment decision is *de novo* upon the record; no presumption of correctness is accorded the conclusions of the lower court. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997). In reviewing the record, we must "view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor." ***Staples v. CBL & Assocs., Inc.***, 15 S.W.3d 83, 89 (Tenn. 2000). A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; ***Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993). Thus, summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. ***Carvell v. Bottoms***, 900 S.W.2d 23, 26 (Tenn. 1995). "When weighing such a motion, if the mind of the court entertains any doubt whether or not a genuine issue exists as to any material fact it is its duty to overrule the motion." ***Poore v. Magnavox Co.***, 666 S.W.2d 48, 49 (Tenn. 1984).

The issue raised on appeal requires this Court to interpret a written agreement, namely, the cargo insurance policy. In construing an insurance policy, we employ the same rules of construction that apply to contracts generally. ***McKimm v. Bell***, 790 S.W.2d 526, 527 (Tenn. 1990). Accordingly, the goal is "to give effect to the intention and express language of the [contracting] parties." ***Harrell v. Minnesota Mut. Life Ins.***, 937 S.W.2d 809, 814 (Tenn. 1996) (citing ***Tata v. Nichols***, 848 S.W.2d 649, 650 (Tenn. 1993)). The terms of an insurance policy are given their common and ordinary meaning, and ambiguous language is construed against the insurer. ***Id.*** Finally, issues relating to the scope of an insurance policy's coverage are matters of law and not fact. ***Victoria Ins. v. Hawkins***, 31 S.W.3d 578 (Tenn. Ct. App. 2000). Thus, "when the relevant facts are not in dispute, the legal issues regarding a policy's coverage may be resolved by summary judgment." ***Nat'l Ins. Ass'n v. Simpson***, 155 S.W.3d 134, 137 (Tenn. Ct. App. 2004) (citing ***St. Paul Fire & Marine Ins. Co. v. Torpoco***, 879 S.W.2d 831, 834 (Tenn. 1994); ***Allstate Ins. Co. v. Jordan***, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999)).

---

[3]While not raised as a formal issue on appeal, Cargo Master also briefly addresses the issue of whether the insurance policy was in effect when the cargo was stolen. The trial court, however, did not rule on this issue, and we decline to address it on appeal. "This court, being a court of errors, cannot review issues not presented *and ruled upon* by the trial court." ***Carver Plumbing Co. v. Beck***, No. 01A01-9708-CV-00377, 1998 WL 161112, at *7 (Tenn. Ct. App. Apr. 8, 1998) (quoting ***King v. Now Invs., Inc.***, 1987 WL 18891, at *2 (Tenn. Ct. App. Oct. 27, 1987), *perm. app. denied* (Tenn. Feb. 1, 1988)). Accordingly, our review is limited to the "in transit" issue.

The policy provision at issue states as follows:

> We will pay for loss to Covered Property from any one of the Covered Causes of Loss.
>
> **1. COVERED PROPERTY**
> Covered property means lawful goods and merchandise of others that you have accepted for transportation under a bill of lading, tariff, shipping receipt or contract of carriage as a common or contract motor carrier or when you trip lease to another motor carrier. Such property is covered while in due course of transit while either in your care, custody or control or in the custody of a connecting carrier.

Thus, there is coverage for the loss only if the loss occurred when the property was "in due course of transit."

The policy at issue does not define the phrase "in due course of transit." As noted by both parties, however, this Court has previously had occasion to discuss the term "in transit" within the meaning of a similar cargo insurance policy. *See Williams v. Berube & Assocs.*, 26 S.W.3d 640 (Tenn. Ct. App. 2000). In *Williams*, the plaintiff operated a business in Dalton, Georgia, which involved the transportation of merchandise to tradeshows by truck and trailer. *Id.* at 641-42. After a tradeshow, the plaintiff's truck driver, instead of transporting the merchandise back to the Dalton location where it was usually stored, parked the trailer containing the merchandise in a lot in Rossville, Georgia. *Id.* at 642. The lot was used for the plaintiff's other, unrelated business. *Id.* After more than a week, including a three-day Christmas holiday, the plaintiff discovered that the trailer and cargo had been stolen from the lot. *Id.* The plaintiff's insurance company denied coverage for the loss of the cargo and the plaintiff sued. *Id.* After a bench trial, the trial court found that the cargo was not "in transit" at the time of the loss and that consequently there was no insurance coverage. The plaintiff appealed. *Id.* at 642-43.

On appeal, the plaintiff in *Williams* argued that this Court should reach the same result reached by a Texas court in the case of *Pennsylvania National Mutual Casualty Insurance Co. v. Murphy*, 579 S.W.2d 58 (Tex. Civ. App. 1979). In *Pennsylvania National*, the Texas court stated that "goods were in transit 'so long as the property [goods] was in the course of being delivered to the place to which it was being shipped.'" *Williams*, 26 S.W.3d at 644 (quoting *Pennsylvania*, 579 S.W.2d at 62)) (alteration in original).[4] The *Williams* Court declined to reach the same result reached in *Pennsylvania National*, stating:

> We are unpersuaded by Plaintiff's argument that the *Pennsylvania* case is analogous to the case at issue. . . . Plaintiff's cargo was not in the process of being shipped, and

---

[4]In *Pennsylvania National*, the plaintiff parked a truck containing cargo in a motel parking lot before retiring to his motel room for the night. *Pennsylvania National*, 579 S.W.2d at 59. The truck was broken into overnight and the goods were stolen. *Id.* at 60. The Texas court found that the goods were "in transit" within the meaning of the insurance policy at issue there. *Id.* at 62.

it was not parked overnight in the course of delivery. . . . [I]t was left on a lot, where it was not discovered missing until more than a week later. Even if this Court adopted the definition of in transit provided in *Pennsylvania*, Plaintiff's cargo would not fall within its meaning.

*Id.* Instead, *Williams* consulted the definitions of "in transit" and "transit" set forth in ***Black's Law Dictionary***[5] in order to use the common and ordinary meaning of the words—"that 'in transit' is limited to the time that cargo is actually in route from one place to the next." *Id.* at 643-44. Based on the particular facts in *Williams*, this Court affirmed the decision of the trial court, ruling that the plaintiff's cargo was not "in transit" at the time of the loss. *Id.* at 644.

Both parties make an argument based on *Williams*. Cargo Master contrasts the facts in this case to those in *Williams*, arguing that an overnight stop, as opposed to a stop of a week or more, does not constitute a sufficient deviation from the delivery course so as to render the cargo no longer in transit for purposes of coverage. ACE argues, however, that the crux of the *Williams* case is not the length of time involved in the stop, but rather the question of whether the cargo was "in the process of shipment" at the time of the loss. According to ACE, the cargo in the instant case was not actually en route, and thus not in transit, because the driver effectively abandoned the freight when he left the trailer containing the cargo behind the shopping center.

In *Williams*, we were presented with a fact situation in which the cargo "was left on a lot, where it was not discovered missing for more than a week later." *Williams*, 26 S.W.3d at 644. Under these circumstances, the cargo was clearly not "in the process of being shipped, and it was not parked overnight in the course of delivery." *Id.* Instead, the trailer sat idle for a substantial period of time and for reasons apparently unrelated to its carriage. Under those circumstances, it was not necessary for this Court to set forth a comprehensive definition of the term "in transit" for purposes of insurance coverage. *See id.* The facts in the instant case, however, are less clear—a shipment of tires was parked behind a shopping center overnight and discovered missing the next day. Presented with these facts, we find it necessary to research further to find a more complete definition of the term "in transit" or "in due course of transit."

In doing so, we note that courts in other jurisdictions have discussed the meaning of the term "in transit" for purposes of determining insurance coverage. For example, in ***Dealers Dairy Products Co. v. Royal Ins. Co.***, 164 N.E.2d 745 (Ohio 1960), the plaintiff's driver, while en route, was instructed to unload a shipment of machinery and equipment at a warehouse in order to make an emergency pick-up and delivery to another customer. ***Dealers Dairy***, 164 N.E.2d at 746-47.

---

[5]As noted in footnote 2 of the *Williams* opinion, the fifth edition of ***Black's Law Dictionary*** defined "in transit" as "on the way or passage; while passing from one person or place to another; in the course of transportation." *Williams*, 26 S.W.3d at 644 n.2 (quoting ***Black's Law Dictionary*** 738 (5th ed. 1979)). ***Black's*** further defined the term "transit" as: "[W]ithin [a] policy covering goods in transit, [the] term has significance of activity and of motion and direction; literally it means in [the course] of passing from point to point, and ordinarily goods in transit would imply that goods will lawfully be picked up at given place and hauled to place designated by owner or one with authority to so designate." *Id.* (quoting ***Black's Law Dictionary*** 1343 (5th ed. 1979)).

When he returned to the warehouse two days later, the driver discovered that the original shipment was missing. *Id.* at 747. In finding that the shipment was not "in transit" within the meaning of the plaintiff's insurance policy, the Supreme Court of Ohio stated:

> The words, 'in transit' and 'transportation,' . . . comprehend the carriage of goods from one point to another and ordinarily mean the movement of the goods on a transporting conveyance from the starting point to the point of delivery, *including stops along the way incidental to the carriage.* Of course, minor deviations from the customary route and temporary stops, even overnight, for the convenience of the operator of the conveyance and for other purposes connected with the carriage, will not remove the goods from the transportation.

*Id.* (emphasis added); *see also Stein-McMurray Ins. Inc. v. Highlands Ins. Co.*, 520 P.2d 865, 868 (Idaho 1974) (defining "in transit" as "the time from when the [property] left its point of departure until it arrived at its point of destination, including any reasonable delays along the way that related to the transportation"); *Koshland v. Columbia Ins. Co.*, 130 N.E. 41, 43 (Mass. 1921) (noting that "delays commonly incident to a movement of merchandise across the continent would not ordinarily be thought to suspend transportation or transit"); *Brown v. Am. Cas. Co.*, 34 Pa. D. & C.2d 204, 208 (C.P. 1964) (recognizing that "the kind of interruption which will take cargo out of transit must be an interruption of such duration and nature as not to be incidental to the transit itself").

Courts in New York have defined the term in a similar fashion. In *Franklin v. Washington General Ins.*, 310 N.Y.S.2d 648 (Sup. Ct. 1970), for instance, the plaintiff was going to travel to an exhibit for rare documents. He loaded antiquated documents into the trunk of his car and drove the car to his home, intending to drive to the airport the next morning. He left the documents in his locked trunk overnight. *Franklin*, 310 N.Y.S.2d at 649. The next morning, the documents were discovered stolen. *Id.* The New York court held that the goods were "in transit" at the time of the loss, stating:

> Once the transportation of the goods has started, the property remains under the protection of the policy during the *ordinary delays in transshipments incident to such movements* . . . and (coverage) is not confined to periods of actual movement, but includes periods of rest during the progress of the continuous undertaking. Whether an interruption in actual transit is sufficient to remove the goods from coverage, depends on the *extent and purpose of the interruption in the context of the risk contemplated.* A temporary interruption *for a purpose related to the carriage itself* does not remove the property from transportation.

*Id.* at 650 (emphasis added) (citations omitted).

Likewise, in *Ben Pulitzer Creations, Inc. v. Phoenix Ins. Co.*, 263 N.Y.S.2d 373, (Civ. Ct. 1965), the plaintiff's contracted driver was delivering to the plaintiff a shipment of neckties ready for sale. *Ben Pulitzer Creations*, 263 N.Y.S.2d at 374. The driver, however, did not reach the

plaintiff's place of business until late Friday afternoon, after the plaintiff had already closed for the weekend. *Id.* The driver parked the delivery wagon in a rented garage, with the intent to deliver the shipment to the plaintiff's store the following week. *Id.* On Monday morning, however, the driver discovered that the neckties had been stolen from the wagon. *Id.* The New York court held that the goods were "in transit" under the insurance policy, explaining that:

> The true test . . . appears to be not whether movement was interrupted overnight, or over a week end, but whether the goods, even though temporarily at rest, were still on their way, *with any stoppage merely incidental to the main purpose of delivery*. Here the goods had arrived at the point of destination, but there being no one there to receive the goods, the storage of the station wagon in the contractor's parking space . . . was consistent with the continuing transit, and was not a deviation or by-pass for the contractor's own convenience.

*Id.* at 376 (emphasis added).

Additional cases from other jurisdictions likewise recognize that a temporary stop for reasons related to the carriage process itself generally does not mean that the cargo is not in transit for purposes of coverage. *See Aetna Cas. & Surety Co. v. Burbank Generators, Inc.*, 175 Cal. Rptr. 568 (Ct. App. 1981) (holding that cargo contained in trailers, which were parked and left for eight hours to facilitate a later pick-up, were in transit); *Home Ins. Co. v. F & F Clothing Co.*, 243 A.2d 572 (Md. 1968) (finding no abandonment of the shipment process where driver parked a loaded delivery wagon in front of home overnight so that he could start early the next morning). We are persuaded that these cases set forth more complete definitions of the terms "in transit" or "in due course of transit" and are consistent with our previous decision in *Williams v. Berube & Associates*, 26 S.W.3d 640 (Tenn. Ct. App. 2000). Accordingly, we find that the common and ordinary meaning of the terms "in transit" or "in due course of transit," while limited to cargo that is actually en route from one place to the next, contemplates temporary stops which are incidental to the course of transportation. Whether an interruption in the actual movement of the cargo is incidental to the course of transportation depends upon the purpose and extent of the stop.

Thus, we note that the issue of whether cargo remains "in transit" during temporary cessations in actual movement must be decided on a case-by-case basis, considering the particular circumstances presented. In the instant case, the parties do not dispute that the driver disconnected the trailer containing a shipment of tires from the truck and left it in a parking lot behind a shopping center overnight, during which time the trailer and its cargo were stolen. From these limited facts, however, we cannot determine as a matter of law whether this delay constitutes such a deviation from the course of delivery so as to render the shipment of tires no longer "in transit" or "in due course of transit." Although Cargo Master asserts that the trailer was parked due to mechanical difficulties, the record is unclear on the circumstances surrounding the incident. From our review of the record, therefore, we find that genuine issues of material fact remain as to whether the overnight stop was incidental to the process of transporting the shipment for purposes of determining coverage under the cargo insurance policy. Therefore, we must reverse the trial court's grant of

summary judgment in favor of ACE. The trial court's denial of Cargo Master's motion for summary judgment is affirmed, and the case is remanded to the trial court for further proceedings consistent with this Opinion.

The decision of the trial court is reversed in part and affirmed in part, as set forth above, and the case is remanded for further proceedings. Cost of this appeal are to be taxed to Defendant/Appellee ACE, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE